UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:

        REINA MERCADO,

                             Debtor.
-----------------------------------------------------------X

Case No. 1-13-40725-jf
Chapter 7

### APPEARANCE

To the clerk of the court and all parties of record:

    Enter my appearance as counsel in this case for REINA MERCADO, Alledged Debtor.

    I certify that I am admitted to practice in this court.

                          S/

                          WILLIAM H. SALGADO
                          Attorney for Alleged Debtor (WS8153)
                          37-06 82nd Stjreet Suite 310
                          Jackson Heights, NY 11372
                          (718) 458 0047

Dated: May 15, 2013

WILLIAM H. SALGADO
Attorney for Alleged Debtor
37-06 82nd Street   Suiter 310
Jackson Heights, NY 11372
(718) 458 0047
(718) 899 6988 - Fax
salgadolaw@att.net

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In Re:

REINA MERCADO,

                    Debtor.
------------------------------------------------------------X

Case No. 1-13-40725-jf
Chapter 7

**NOTICE OF MOTION**
Return Date:  June 25, 2013
                      10:00 AM

TO:    Stuart I. Davis
          Attorney for Petitoner
          1960 Williamsbridge Road
          Bronx, NY 10461

          **PLEASE TAKE NOTICE** that upon the affidavit of the Alleged Debtor, Reina

Mercado, sworn to on May 15, 2013, and the motion of William H. Salgado, dated May 15, 2013,

the Alleged Dbtor will move this court for an order:

          a)  vacating the order of relief dated March 11, 2013, pursuant to Fed. R. Bankr. P. 9024 and

Rule 60 Fed. Civ.P.; and

          b)  dismissing the involuntary Chapter 7 petition filed against the alleged debtor pursuant to

11 U.S.S. 303(b)(1) on the ground that the alleged "claim" upon which the petitioner premises its

filing does not exist and that the alleged "claim" is the subject of a bonafide dispute as to liability;

          c)  dismissing this petition on the ground that it was filed in bad faith and that such filing is

the petitioner's improper effort to transfer to the bankruptcy court a controversy between the parties

that was in litigation in state court, and should continue to be litigated in state court;

d) granting any such other and further relief as to this court may seem just and proper.

**PLEASE TAKE FURTHER NOTICE** that the Motion is set for hearing on June 25, 2013, at 10:00AM, before the Hon. Jerome Feller, at the Courthouse of the US Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Room 3554, Brooklyn, New York 11201. Pursuant to E.D.N.Y. LBR 9006-1(a)(ii) any answering papers shall be served so as to be received not later than 7 days before the hearing date.

Dated:     05/15/13

S/

**WILLIAM H. SALGADO**
Attorney for Alleged Debtor (WS8153)
37-06 82nd Street    Suite 310
Jackson Heights, NY 11372
(718) 458 0047

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In Re:

REINA MERCADO,

                              Debtor.
------------------------------------------------------------X

Case No. 1-13-40725-jf
Chapter 7

Return Date:   June 25, 2013
                      10:00 AM

### Motion to Vacate Order of Relief

### Motion to Dismiss Involuntary Petition

#### I

#### INTRODUCTION

     Reina Mercado ( "Alleged Debtor") is a self-employed individual that has been placed in severe, imminent peril. On February 8, 2013, the petitioner, Tanya Khursanova, filed an involuntary chapter 7 petition against the Alleged Debtor. A copy of the involuntary petition is attached hereto as Exhibit A.

     As set forth in the affidavit of the Alleged Debtor, she is not engaged in any business with the Petitioner. The petitioner does not supply the Alleged debtor any goods or services. The petitioner does not have any notes payable by the Alleged Debtor. The Alleged Debtor, consequently, is not indebted to the petitioner.

     There is a controversy between the Alleged Debtor and the Petitioner relating to their joint ownership of real property known as and by the street address of 1750 East 51st Street, Brooklyn, NY 11234 ("subject property"). That controversy was in litigation in state court, Supreme Court, Kings County, Index No. 12726/2011. That action, however, was dismissed due to procedural reasons. Attached as Exhibit B please find a copy of a printout from the Supreme Court Clerk

1

showing the dismissal. The "claim" asserted in petition in this involuntary Chapter 7 case is "debtor's failure to turn over rents as collected." Nothing else is specified in the petition. As the only relationship between the parties stems from their joint ownership of the subject property, the petitioner's "claim" can relate only to the subject property. As joint owner of the subject property with the petitioner, the Alleged Debtor has an equal legal right with petitioner to collect rents from the subject property. What to do with those rents is the issue between the parties. The petitioner's "claim," therefore, is most definitely subject to a bona fide dispute between the parties. As such, the petitioner is not eligible to file the instant involuntary Chapter 7 case.

The commencement of this involuntary Chapter 7 bankruptcy proceeding is an improper attempt by the petitioner to transfer to the bankruptcy court a controversy that should be determined in state court.

The Alleged Debtor has does not have any business debts. The Alleged Debtor has paid all her personal debts as they came due. As a result of the filing of the petition in this proceeding, the Alleged Debtor's property has been placed in peril of being liquidated in bankruptcy proceedings, her credit rating has been affected by the filing inasmuch as it will appear on her credit report, and the Alleged Debtor has been forced to incur expenses to litigate this matter.

As has been set forth in the Alleged Debtor's affidavit, she is not insolvent, she is not behind in the payment of her debts, the controversy between the Alleged Debtor and the petitioner belongs in state court and should be determined in state court. The filing of this involuntary petition is, consequently, in bad faith. The Alleged Debtor respectfully requests that this court dismiss this involuntary chapter 7 case.

2

## II.

## FACTS

### A. The Alleged Debtor.

The Alleged Debtor is a natural person. She is from El Salvador. She has at most an elementary school education and a very limited command of English. She is self-employed as a housekeeper. She does not have any business debt. She performs housekeeping and maintenance services for individuals. She has no business relationship of any sort with the petitioner. She does not have any outstanding debts to the petitioner. All payments for personal debt are up to date. The Alleged Debtor is not insolvent.

### B. The Petitioner

Tanya Khursanova, a natural person, is the petitioner in this involuntary Chapter 7 case. Together with her husband, Ahmed Mohammed ("Mr. Mohammed"), the petitioner has owned various real properties in the City of New York. Additionally, the petitioner, with Mr. Mohammed, has owned various businesses in the City of New York, inclusive of restaurants in midtown Manhattan. There is no business relationship between the petitioner and the Alleged Debtor. The petitioner is not owed any funds by the Alleged Debtor for materials or services rendered. The petitioner is not owed any funds by the Alleged Debtor by reason of notes payable, leases, or any other sort of debt. Quite to the contrary, the Alleged Debtor and her husband have claims against the petitioner.

### C. Controversy Between the Alleged Debtor and the Petitioner

On December 14, 2006, the petitioner sold to the Alleged Debtor a one-half interest in the subject property. A copy of the deed representing that transaction is annexed as Exhibit C.

3

The price paid by the Alleged Debtor to the petitioner for that one-half interest was $250,000. The petitioner and Mr. Mohammed represented to the Alleged Debtor that that was a good price inasmuch as the property was alleged to have been appraised at $700,000. The petitioner and Mr. Mohammed guided the Alleged Debtor through the transaction. The petitioner and Mr. Mohammed convinced the Alleged Debtor that she could do the transaction on her own and that the Alleged Debtor did not require an attorney. A title report was not done.

The petitioner failed to disclose to the Alleged Debtor that there was a mortgage on the subject property in the sum of $499,000 ("first mortgage"). A copy of that mortgage is attached as Exhibit D. The petitioner also failed to disclose to the Alleged Debtor that the petitioner had, prior to selling the to the Alleged Debtor a one-half interest in the subject property, refinanced the prior mortgage cashing out $269, 000. A copy of that prior refinanced mortgage is attached as Exhibit E. Thus, combining the refinance and the amount paid by the Alleged Debtor, the petitioner has cashed out approximately $519,000 of equity from the subject property. At present, according the Department of Finance of the City of New York, the subject property has a market value of $553,000. A copy of a the February 22, 2013, tax bill for the subject property, which contains that information, is attached as Exhibit F.

In order to pay the petitioner for the one-half interest in the property, the Alleged Debtor obtained a mortgage in the sum of $245,000. This mortgage was recorded against the subject property ("second mortgage"). Attached as Exhibit G please find a copy of the second mortgage. At the closing of the second mortgage, the Alleged Debtor turned over the entire proceeds to the petitioner. Additionally, the Alleged Debtor paid to the petitioner $10,000 to cover "closing costs."

From December 14, 2006, until on or about August 2010, the Alleged Debtor turned

4

over to the petitioner all the rents collected from the subject property. It became the practice between the parties that the petitioner would pay for the first mortgage out of the rents received and the Alleged Debtor would pay the second mortgage out of her personal funds.

On or about August 2010, the Alleged Debtor became aware that the petitioner, although collecting rents, was not paying the first mortgage. At that point, the Alleged Debtor stopped turning over the rents to the petitioner. Various attempts to resolve the issues between the parties were unsuccessful. The petitioner and her husband simply demand the turning over to them of the rents, without any guarantee that the petitioner would pay the first mortgage. To date, the first mortgage has remained unpaid by the petitioner. Payments on the second mortgage, the responsibility of the Alleged Debtor are current. A copy of a recent bank statement of the second mortgage is attached as Exhibit H.

The petitioner sued the Alleged Debtor in Supreme Court, Kings County, for an accounting. A copy of the complaint in that action is attached as Exhibit I. The Alleged Debtor submitted an answer, with counterclaims for partition, for payment of funds owed by petitioner to the Alleged Debtor, and asserting other claims that Alleged Debtor has against the petitioner. The counterclaims asserted by the Alleged Debtor against the petitioner amount to $201,333.00. A copy of the answer with counterclaims is attached as Exhibit J.

A recent dunning letter from Bank of America, the lender holding the first mortgage, indicates that the first mortgage has not been paid since February 1, 2009. A copy of said letter is attached as Exhibit K. Thus it appears that from February 2009 to July 2010, the petitioner received the monies collected as rents, converted those funds to her personal use, and failed to pay the first mortgage. The petitioner's act of not paying the first mortgage has placed the subject property in

5

danger of being foreclosed upon. The petitioner, in essence, wishes to have her cake and eat it also. Petitioner demands payments to her of the funds collected as rents from the subject property, but fails to comply with petitioner's responsibility of paying the first mortgage.

Since the Alleged Debtor stopped turning over to petitioner the rents collected, the petitioner and her husband have engaged in a campaign of harassment against the Alleged Debtor making threatening telephone calls, sending threatening mail to the tenants, Exhibit L, fraudulent legal notices to tenants, Exhibit M, making repeated false reports to the police, fire department and buildings department, Exhibit N. During the months of June and July 2012, the premises were visited by each of those city agencies on at least twenty separate instances, most certainly not at the invitation of the Alleged Debtor. The filing of the instant involuntary Chapter 7 petition is the latest act of aggression by the petitioner against the Alleged Debtor.

As may be seen, the issue between the parties consists of a dispute between joint owners of real property. It is a state court issue. It does not belong in bankruptcy court.

The commencing of this involuntary Chapter 7 proceeding against the Alleged Debtor is an improper effort by the petitioner to bring into the bankruptcy court an issue that should be in state court.

The facts of this matter make it clear that the filing of the instant involuntary Chapter 7 case was done in bad faith.

## III

## THE INVOLUNTARY PETITION SHOULD BE IMMEDIATELY DISMISSED

Section 303 of the Bankruptcy Code (11 U.S.C. 303) governs the commencement of involuntary bankruptcy cases. An involuntary bankruptcy petition against an entity that is not a

partnership can only be filed by an entity that holds a "claim" against the Alleged Debtor. As set forth above, and in the Alleged Debtor's affidavit, the Alleged Debtor is not indebted in any manner to the petitioner.

Further, to be eligible to file an involuntary petition, the holder of a claim against an Alleged Debtor must hold a claim "that is not contingent as to liability or the subject of bona fide dispute...." 11 U.S.C. 303(b)(1). Even if the Petitioner held a "claim" (as that term is broadly defined in 11 U.S.C. 101(5)), which petitioner does not, the claim in this instance would be a disputed claim. Accordingly, under any scenario, the Petitioner was not eligible to file an involuntary petition against the Alleged Debtor. On that basis alone, an immediate dismissal of the involuntary petition is proper, appropriate, and necessary. "The Bankruptcy Code clearly states that an involuntary petition can be filed by creditors who hold claims that are not contingent as to liability or subject to bona fide dispute." *Landon v. Hunt*, 997 F.2d 832 (3d. Cir. 1992); *In re American President Lines, Ltd*, 804 F.2d 1307, 1309 ("Section 303(b) of the Bankruptcy Code explicitly and clearly prescribes the requirements for the commencing an involuntary case..." and requires the filing of a petition by three or more entities holding claims against the debtor that are not contingent as to liability or subject to bona fide dispute.).

The filing of an involuntary petition against the Alleged Debtor represents the pursuit of a drastic remedy that has an immediate and potentially devastating impact on the Alleged Debtor. Courts have recognized that the filing of an involuntary petition is a drastic remedy with serious consequences. For example, in *In re Landmark Distributors, Inc.*, 189 B.R. 290, 306 (Bankr. D.N.J. 1995) in which the bankruptcy court imposed compensatory damages of $3.2 million and punitive damages of $500,000 against the petitioning creditors, the court stated:

7

As has been generally recognized, in light of Code Section 303, petitioning creditors should carefully examine the risks undertaken in the filing of an involuntary petition . . . .

The court in *In re McDonald Trucking Co., Inc.*, 76 B.R. 513, 516 (Bankr. W.D. Pa. 1987) Stated:

The filing of an involuntary petition by a creditor must be carefully scrutinized by the court because such action is extreme in nature and carries with it serious consequences to the Alleged Debtor, examples of which include loss of credit standing, interference with general Business affairs and public embarrassment.

The court in *In re Advance Press & Litho, Inc.*, 46 B.R 700, 702 (D. Colo. 1984) warned that the filing of an involuntary petition is not something which should be lightly undertaken. The court noted that even good faith filing of such petition creates onerous circumstances for a debtor. Moreover, in *In re Salem Corporation*, 29 B.R. 424 (S.D. Ohio 1983), the court admonished that the Bankruptcy Code was created by Congress to act as a shield for debtors, rather than as a sword for creditors.

*In re Landmark Distributors Inc.*, 189 B.R. 306 . . . .

Many courts have recognized that the filing of an involuntary bankruptcy petition is a drastic remedy. See, e.g., *In re Gill Creek Parkway Associates, L.P.*, 194 B.R. 59, 64 (Bankr. D.S.C. 1995) (dismissal of involuntary petition warranted where petitioning creditor failed to show that its claim was not subject of bona fide dispute). Thus, as one bankruptcy court noted, "[a] contested involuntary petition must be closely scrutinized because involuntary bankruptcy is a severe measure that frequently carries severe consequences for the debtor, such a loss of credit standing,

8

interruption of business affairs and even public embarrassment." *In re Compuhouse Systems, Inc.,* 168 B.R. 305, 308 (Bankr W.D. PA. 1994), *aff'd,* 85 F.3d 612 (3rd Cir. 1996) (involuntary chapter 7 petition dismissed on grounds that petitioning creditors lacked debts not subject to a bona fide dispute). *See also In re ABO-MCB Joint Venture,* 153 B.R. 338, 341 (Bankr D.N.M. 1993) (dismissal of involuntary petition is proper where the petitioning party uses the bankruptcy process in bad faith and "solely for the purpose of moving state court litigation to [the bankruptcy] forum"); *In re A &T Partnership,* 192 B.R. 900, 902-03(Bankr. S.D. Ohio 1996)(same); *Matter of WinSum Sports, Inc.,* 14 B.R. 389 (Bankr. D. Conn. 1981)(same); *In re Beacon Reff Limited Partnership,* 43 B.R. 644 (Bankr. S.D. Fla. 1984) (same).

Even if the petitioner were eligible to file the involuntary petition against the Alleged Debtor, the involuntary petition would have to be dismissed because the Alleged Debtor is paying debts as they come due. See 11 U.S.C. 303(h)(1). As discussed above, and in the attached affidavit, at all times prior to filing the involuntary petition by the petitioner, the Alleged Debtor was paying all of its debts as they came due.

Additional grounds for immediate dismissal of the involuntary petition can be found in 11 U.S.C. 1112(b) and 305(a)(1).

While this is an involuntary Chapter 7 case, decisions relating to involuntary Chapter 11 cases may be illustrative. Under Bankruptcy Code section 1112(b), a chapter 11 case may be dismissed for "cause" if dismissal is in the best interests of creditors and the estate. *See* 11 U.S.C. 1112(b). While section 1112(b) contains a list of factors which constitute cause, the list is not exhaustive. The Bankruptcy Code affords a bankruptcy court wide discretion to determine wether cause exits. *See In re Tornheim,* 181 B.R. 161, 163 (Bankr. S.D.N.Y. 1995) ("The factors listed in

9

section 1112(b) are not exhaustive, and the Bankruptcy Code affords a bankruptcy court wide discretion to determine if cause exists."); *In re Turboff,* 120 B.R. 849, 850 (Bankr. S.D.Text. 1990) ("In determining wether to dismiss, courts use their equitable authority and consider the factors of each case to reach an appropriate result.")

What constitutes "cause" for dismissal of chapter 11 case under section 1112(b) is a matter of judicial discretion under the particular circumstances of each case. "Thus in determining 'cause' for dismissal the court may consider other factors as they arise and use its powers to reach appropriate results in individual cases." *In re Gonic Realty Trust,* 909 F.2d 624, 626 (1st Cir. 1990); *In re Torheim,* 181 B.R. 161, 163; H.R. Rep. No. 595, 95th Cong., 1st Sess 405-06 (1977), 1978 S. Rep. No. 989, 95th Cong., 2d Sess. 117-18 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5903, 5904, 6361, 6321. Further, the Debtor's request for dismissal should ordinarily be granted unless some "plain legal prejudice" will result to the creditors. *Gill v. Hall (In re Hall),* 15 B.R. 913, 917 (B.A.P. 9th Cir. 1981); *In re Kimble,* 96 B.R. 305, 308 (Bankr. D. Mont 1988).

As an alternative to dismissal under 11 U.S.C. 1112(b), the court may dismiss this case pursuant to 11 U.S.C. 305(a)(1). In determining wother dismissal under section 305(a) is appropriate, courts have looked to the facts of individual cases while considering a number of factors (each of which can constitute "cause" under section 1112(b)).

> Such factors generally include: (1) economy and efficiency of administration; (2) wether another forum is available to protect the interests of both parties or there is already a pending proceeding
>
> in state court; (3) wether federal proceedings are necessary to reach a just and equitable solution; (4) wether there is an alternative means of achieving the equitable

10

distribution of assets; (5) wether the debtor and creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) wether non- federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has sought.

In re Fax Station, Inc., 118 B.R. 176, 177 (Bankr. D.R.I. 1990); See also In re Mazzocone, 200 B.R. 568, 575 (E.D. Pa. 1996).

The decision under both section 305(a)(1) and section 1112(b) regarding whether to dismiss a case is discretionary and must be made on a case-by-case basis. In re A & D Care, Inc., 90 B.R. 138, 141 (Bankr. W.D. Pa. 1988); In re O'Neil Village Personal Case Corp., 88 B.R. 76, 79 (Bankr. W.D. Pa. 1988); In re Williamsburg Suites, Ltd., 117 B.R. 216, 218 (Bankr. E.D. Va. 1990); In re Gonic Realty Trust, 909 F.2d at 626. The factors present in the case overwhelmingly demonstrate that dismissal is in the best interest of the Debtor and any legitimate creditors (the Alleged Debtor's debts are being paid as they come due). Accordingly, the Alleged Debtor's motion to dismiss the involuntary petition should be granted.

## IV

## THE ORDER OF RELIEF SHOULD BE VACATED

The order of relief dated May 11, 2013, was granted because the Alleged Debtor did not file an answer. A copy of the order is attached as Exhibit O.

The rules provide for setting aside a default in the discretion of the court. Fed. R. Bankr. R. 9024, Fed. R. Civ. P. 60(b). Courts, in the exercise of discretion, are guided by the fact that default judgments are not favored by the law. Coon v. Grenier, 867 F2d 73 (C.A. 1st 1989), 10A

11

Wright, Miller & Kane, Civil 3d § 2393. The party seeking relief from a default must show that there was a good reason for the default and that the party has a meritorious defense to the action. *McGradu v. D'Andrea Elec., Inc.*, 434 F2d 1000 (C.A. 5th 1970).

As has been set forth above and in the affidavit of the Alleged Debtor, she did not timely file an answer due to a difficulty in securing counsel. Her failure from timely filing an answer stems from that difficulty, rather than from any deliberate disregard on her part of her obligations as a litigant.

Moreover, as has been set forth above, the Alleged Debtor has a meritorious defense to the petition. In particular, she is not insolvent and she has a bona fide dispute with the petitioner. Additionally, the facts set forth indicate that the petition was filed in bad faith. It is respectfully submitted that the petitioner is not eligible to file under 11 USC 303. Thus, the Alleged Debtor meets the requirements to be relieved from the default.

It is therefore respectfully requested that this court vacate the order of relief dated March 11, 2013, and dismiss the instant involuntary Chapter 7 petition for cause.

If the court does not dismiss the petition, it is respectfully requested that the Alleged Debtor be permitted to serve and file an answer, and be permitted to defend this matter on the merits.

V

## CONCLUSION

**WHEREFORE**, considering the foregoing, the attached affidavit of the Alleged Debtor, the exhibits attached to this motion, it is respectfully requested that this court grant an order:

a) vacating the order of relief dated March 11, 2013, pursuant to Fed. R. Bankr. P. 9024 and Rule 60 F.R.Civ.P.; and

12

b) dismissing the involuntary Chapter 7 petition filed against the alleged debtor pursuant to 11 U.S.S. 303(b)(1) on the ground that the alleged "claim" upon which the petitioner premises its filing does not exist and that the alleged "claim" is the subject of a bonafide dispute as to liability;

c) dismissing this petition on the ground that it was filed in bad faith and that such filing is the petitioner's improper effort to transfer to the bankruptcy court a controversy between the parties that was in litigation in state court, and should continue to be litigated in state court;

d) granting any such other and further relief as to this court may seem just and proper.

Dated:        May 15, 2013                        Respectfully submitted,


                                          S /
                                          **WILLIAM H. SALGADO**
                                          Attorney for Alleged Debtor (WS8153)
                                          37-06 82nd Street   Suite 310
                                          Jackson Heights, NY 11372
                                          (718) 458 0047

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:

REINA MERCADO,

Debtor.
-----------------------------------------------------------X

Case No. 1-13-40725-jf
Chapter 7

**AFFIDAVIT IN SUPPORT
OF MOTION**
Return Date:   June 25, 2013
                      10:00 AM

STATE OF NEW YORK, COUNTY OF QUEENS, SS:

REINA MERCADO, being duly sworn, deposes and says:

1. I am the alleged debtor in this case.

2. I am submitting this affidavit in support of my motion for an order:

a) vacating the order of relief dated March 11, 2013, pursuant to Fed. R. Bankr. P. 9024
and Rule 60 F.R.Civ.P.; and

b) dismissing the involuntary Chapter 7 petition filed against the alleged debtor pursuant
to 11 U.S.C. 303(b)(1) on the ground that the alleged "claim" upon which the petitioner premises
its filing is contingent as to liability  and that the alleged "claim" is the subject of a bonafide
dispute between the parties;

c) dismissing this petition on the ground that it was filed in bad faith and that such filing
is the petitioner's improper effort to transfer to the bankruptcy court a controversy between the
parties that was in litigation in state court, and should continue to be litigated in state court;

d) granting any such other and further relief as to this court may seem just and proper.

3. I request that the order of relief dated March 11, 2013, be vacated because of
excusable neglect, and because I have a meritorious defense to the petitioner's claims.

4. The summons arrived in by ordinary mail. I immediately sent it by fax to my

attorney and requested an appointment to see him.

5. He did not call me back. I called his office repeatedly by did not get an answer.

6. Apparently the fax was not immediately brought to my attorney's attention but was placed in a pile of "to file" documents and it lay unattended for several days.

7. My attempts to reach my attorney were futile. My attorney responded only when I later faxed him the order of relief, which I had just received.

8. My attorney appeared at the initial 341 meeting on April 17, 2013, but was informed that that meeting had been adjourned to May 22, 2013.

9. It was only then that I had an opportunity to fully discuss this matter with my attorney and that he fully reviewed the case and was able to inform me as to the nature of the this proceeding.

10. I did not deliberately disregard my obligations as a litigant. I tried to seek legal advise immediately, but the delay in being able to meet with my attorney caused me to me inadvertently miss the deadline to respond.

11. Immediately upon being informed as to the nature and circumstances of this case, I have retained counsel and I ready actively and fully defend this matter on the merits.

12. I most definitely have a meritorious defense to the allegations of the petition in that I do not have any business debts to the petitioner, I am not insolvent, I am making all my payments on time, and the alleged "claim" of the petitioner is subject to a legitimate dispute, and is a controversy that should be in state court. Indeed, the controversy between the parties had been pending before the Supreme Court of the State of New York, Kings County, Index No. 7256/2008. That action was due to procedural matters as was explained to me by my attorney.

Exhibit B.

13. Rather than recommence litigation in state court, the petitioner elected to proceed in this court. It is submitted, for the reasons set forth below, the filing in this court is improper and in bad faith, and should be dismissed.

## FACTUAL BACKGROUND

14. At the present time, I am self-employed as a housekeeper.

15. I am current on all payments on my credit cards, personal loans and all other financial obligations that pertain to me. I am presently seeking a loan modification of a property that I own in New Jersey.

16. I am not insolvent.

17. I do not have any business relationship with the petitioner. I do not owe the petitioner for any services performed or for any merchandise delivered.

18. There are no outstanding invoices from the petitioner to me.

19. We do have a dispute as to a piece of real estate that the petitioner and I own together.

20. The petitioner and I own jointly a house located at 1750 East 51st Street, Brooklyn, NY 11234. The petitioner sold me ostensibly a one half interest in the subject property. A copy of the deed is annexed as Exhibit C.

21. At the time of the sale the petitioner failed to disclose to me that there was a mortgage on the property.

22. The petitioner deliberately, and with the intent of defrauding me, convinced me not to retain an attorney. Consequently, no title search was done, and I was not aware that a mortgage existed on the property.

23. The petitioner represented to me that the property was worth $700,000 and that $250,000 for half the property was a bargain. No mention was made of the existing mortgage, which was for $499,000. A copy of the mortgage is annexed as Exhibit D.

24. In recent months, I have learned that the petitioner has not made payments in that mortgage during more than a year. Attached as Exhibit K please find copies of dunning notices sent to the property threatening foreclosure.

25. The house is in imminent danger of going into foreclosure, due to the petitioner's failure to pay the mortgage for which she is responsible.

26. In order to purchase from petitioner I acquired a mortgage in the sum of $245,000. I turned over to the petitioner the entire proceeds of that mortgage. I am current in the payment of the said mortgage. A copy of a recent statement is attached as Exhibit H.

27. Additionally, I paid to the petitioner $10,000 in cash to cover the "costs" of the mortgage application, plus of the "paperwork" related to the purchase of my share.

28. Prior to selling me a share of the property, the petitioner had refinanced the property in the sum of $499,00. The prior mortgage was in the sum of $230,000. A copy of the prior mortgage is attached as Exhibit E This means that the petitioner withdrew from the property approximately $269,000 of the equity.

29. Together with the $250,000 that I paid the defendant, that means that the defendant has withdrawn $519,000 of equity from the property.

30. It is therefore respectfully submitted that the petitioner has already withdrawn substantially all of her interest from the subject property.

31. The petitioner's act of failing to pay the mortgage are placing in danger my interest in the property. It is obvious, and the petitioner has told me so, that she does not care

what happens to the house. In fact, she has threatened to simply stop paying or doing anything, and to walk way and allow the house to be lost to foreclosure.

38. There are two tenants at the property: Fernande Boucicault, Myrlande Boucicault, the tenant to whom the plaintiff has rented apartment 2F. With regard to Mr. and Ms. Boucicault I was the person that leased the premises to them. I am the person that collects rents from them. In essence, I am the person that manages the property.

39. Petitioner is in control of one apartment. If she has it rented, she collects the rent for that apartment. When I was previously in control of that apartment, I used to collect $1,250 per month.

40. From the date of my purchase of a one half interest in the property, December 14, 2006, a copy of the deed is attached as Exhibit C, to on or about August 2010, I turned over to the petitioner all of the rents received from tenants. However, since the petitioner does not pay the mortgage, or any other bill, I have stopped turning over the money to her.

41. Because the petitioner no longer received any of the money from the rents, the petitioner, with her husband, Ahmed Mohammed, have began coming to the property and threatening tenants with eviction, with calling the police, and even with calling the immigration authorities to ask them to come investigate the immigration status of the tenants.

42. That is in addition to having forcibly broken into the premises and having taken over by assault apartment 2F, which they now control, and which they have rented to a tenant and from whom petitioner is collecting rents.

43. The petitioner and her husband have also made false reports to the police, to the Fire Department and to the Department of Buildings filing complaints against me. Exhibit N.

44. During the months of June, July and August of 2012, we were visited by the

Police, the Fire Department and the Department of Buildings on at least twenty separate occasions.

45. The petitioner has also sent threatening mail to the tenants. A copy of a letter sent to tenants is attached as Exhibit L. The petitioner has also sent out fraudulent non-payment notices to the tenants. The tenants have paid their rent. A copy of the said notice is attached as Exhibit M.

46. The petitioner, with her husband, has also personally come to the premises, to verbally threaten the tenants and myself. The petitioner has become very loud and hostile. I am afraid that at any moment she could become violent, or become so hostile that she and her husband will provoke violence at the premises.

47. As the dispute is between myself and the petitioner, it is respectfully submitted that it is inappropriate, irresponsible, and even dangerous for the petitioner and her husband to be coming to the premises to cause such disorder and potential for violence.

48. Considering all of the foregoing, the dispute between the parties is one relating to the ownership of a piece of real property. It should be determined in state court in partition or an accounting action. It does not have any place in bankruptcy court.

49. Consequently, I believe that my instant motion has merit.

50. No prior application has been made for the relief sought herein.

**WHEREFORE,** it is respectfully requested that this court grant an order:

a) vacating the order of relief dated March 11, 2013, pursuant to Fed. R. Bankr. P. 9024 and Rule 60 F.R.Civ.P.; and

b) dismissing the involuntary Chapter 7 petition filed against the alleged debtor pursuant to 11 U.S.C. 303(b)(1) on the ground that the alleged "claim" upon which the petitioner premises its filing is contingent as to liability and that the alleged "claim" is the subject of a bonafide

dispute between the parties;

c) dismissing this petition on the ground that it was filed in bad faith and that such filing

is the petitioner's improper effort to transfer to the bankruptcy court a controversy between the

parties that was in litigation in state court, and should continue to be litigated in state court;

d) granting any such other and further relief as to this court may seem just and proper.

Dated:        May 15, 2013                                      Respectfully submitted,


                                                               S/        Reina Mercado

Sworn to before me this May 15, 2013

S/

                    WILLIAM H. SALGADO
                Notary Public, State of New York
                        No. 02SA4914891
                Qualified in Queens County
                My Commission Expires November 23, 201 3



B5 (Official Form 5) (12/07)

# FORM 5. INVOLUNTARY PETITION

| United States Bankruptcy Court<br>**Eastern District of New York** | INVOLUNTARY PETITION |
|---|---|

| IN RE (Name of Debtor - If Individual: Last, First, Middle)<br><br>Morcado, Reina M | ALL OTHER NAMES used by debtor in the last 6 years<br>(Include married, maiden, and trade names.) |
|---|---|

Last four digits of Social Security or other Individual's Tax-ID No./Complete EIN (If more than one, state all.)

| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code)<br><br>1750 East 51st Street<br>Basement<br>Brooklyn, NY 11234 | MAILING ADDRESS OF DEBTOR (If different from street address) |
|---|---|

COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS
Kings

LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from previously listed addresses)

CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED

■ Chapter 7       □ Chapter 11

## INFORMATION REGARDING DEBTOR (Check applicable boxes)

| Nature of Debts<br>(Check one box)<br><br>Petitioners believe:<br><br>□ Debts are primarily consumer debts<br>■ Debts are primarily business debts | Type of Debtor<br>(Form of Organization)<br><br>■ Individual (Includes Joint Debtor)<br>□ Corporation (Includes LLC and LLP)<br>□ Partnership<br>□ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | Nature of Business (Check one box)<br><br>□ Health Care Business<br>□ Single Asset Real Estate as defined in 11 U.S.C. § 101(51)(B)<br>□ Railroad<br>□ Stockbroker<br>□ Commodity Broker<br>□ Clearing Bank<br>■ Other |
|---|---|---|

| VENUE | FILING FEE (Check one box) |
|---|---|
| ■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in the District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br><br>□ A bankruptcy case concerning debtor's affiliate, general partner or partnership is pending in this District. | ■ Full Filing Fee attached<br><br>□ Petitioner is a child support creditor or its representative, and the form specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached. *If a child support creditor or its representative is a petitioner, and if the petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.* |

PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER
OR AFFILIATE OF THIS DEBTOR (Report information for any additional cases on attached sheets.)

| Name of Debtor | Case Number | Date |
|---|---|---|
| Relationship | District | Judge |

| ALLEGATIONS<br>(Check applicable boxes) | COURT USE ONLY |
|---|---|

1. ■ Petitioner(s) are eligible to file this petition pursuant to 11 U.S.C. § 303(b).

2. ■ The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.

3.a. ■ The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount;

or

3.b. □ Within 120 days preceding the filing of this petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

Name of Debtor: __Marcado, Reina M__

Case No. _____

B5 (Official Form 5) (12/07) - Page 2

## TRANSFER OF CLAIM

☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents evidencing the transfer and any statements that are required under Bankruptcy Rule 1003(a).

## REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

X /s/ Tanya Khursanova

Signature of Petitioner or Representative (State title)

Tanya Khursanova                  February 8, 2013
Name of Petitioner                      Date Signed

Name & Mailing         Tanya Khursanova
Address of Individual  2063 Bragg Street
Signing in Representative  Brooklyn, NY 11229
Capacity

X _____
Signature of Petitioner or Representative (State title)

Name of Petitioner                      Date Signed

Name & Mailing
Address of Individual
Signing in Representative
Capacity

X _____
Signature of Petitioner or Representative (State title)

Name of Petitioner                      Date Signed

Name & Mailing
Address of Individual
Signing in Representative
Capacity

X /s/ Stuart I Davis                 February 8, 2013
Signature of Attorney                     Date

Stuart I Davis
Name of Attorney Firm (If any)

1960 Williamsbridge Road
Bronx, NY 10461
Address
Telephone No.    718-319-1388

X _____
Signature of Attorney                     Date

Name of Attorney Firm (If any)

Address
Telephone No.

X _____
Signature of Attorney                     Date

Name of Attorney Firm (If any)

Address
Telephone No.

## PETITIONING CREDITORS

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| Tanya Khursanova<br>2063 Bragg Street<br>Brooklyn, NY 11229 | Debtor failed to turnover rents as collected. | 90,000.00 |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |

Note: If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above.

Total Amount of Petitioners' Claims
90,000.00

_0_ continuation sheets attached

Software Copyright (c) 1996-2013 - CCH INCORPORATED - www.bestcase.com

Best Case Bankruptcy

# B

012726/2011        KHURSANOVA, TANYA              MERCADO, REINA M.
                   OTHER                          ALL-PURPOSE CATEGORY
                   FRANCOIS A. RIVERA             DISPOSED        PRE-NOTE


LAST - 12/03/2012               CCP        CENTRAL COMPLIANCE PART
                                FAR-52     FRANCOIS A. RIVERA
        STRIAL                  OFDPN      OTHER FINAL DISP. PRE-NOTE
        COMMENT1:    DNAES          COMMENT2:

003  - 10/19/2012                CCP       CENTRAL COMPLIANCE PART
                                FAR-52     FRANCOIS A. RIVERA
        STRIAL                  ADJ        ADJOURNED
        COMMENT1:                   COMMENT2:

002  - 10/15/2012                CCP       CENTRAL COMPLIANCE PART

        STRIAL                  ADJ        ADJOURNED
        COMMENT1:                   COMMENT2





2007020501127001001EA977

## RECORDING AND ENDORSEMENT COVER PAGE

**PAGE 1 OF 4**

Document ID: 2007020501127001
Document Type: DEED
Document Page Count: 3

Document Date: 12-14-2006

Preparation Date: 02-05-2007

**PRESENTER:**
RAPID RECORDING, LLC
4207 AVENUE M
HOLD-FOR-PICKUP
BROOKLYN, NY 11234
718-677-1085
Rapidrecording@hotmail.com/RR-54

**RETURN TO:**
TANYA KHURSANOVA AND REINA MERCADO
1750 EAST 51ST STREET
BROOKLYN, NY 11234

### PROPERTY DATA

Borough: BROOKLYN    Block: 7895    Lot: 72    Entire Lot    Unit    Address: 1750 E. 51ST STREET
Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year____ Reel __ Page ___ or File Number_____

### PARTIES

**GRANTOR/SELLER:**
TANYA KHURSANOVA
1750 E. 51ST STREET
BROOKLYN, NY 11234

**GRANTEE/BUYER:**
REINA MERCADO
1750 E. 51ST STREET
BROOKLYN, NY 11234

### FEES AND TAXES

| Mortgage | | | |
|---|---|---|---|
| Mortgage Amount: | $ 0.00 | Filing Fee: | $ 75.00 |
| Taxable Mortgage Amount: | $ 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ 0.00 |
| TAXES: County (Basic): | $ 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ 0.00 | | $ 0.00 |
| Spec (Additional): | $ 0.00 | | |
| TASF: | $ 0.00 | | |
| MTA: | $ 0.00 | | |
| NYCTA: | $ 0.00 | | |
| Additional MRT: | $ 0.00 | | |
| TOTAL: | $ 0.00 | | |
| Recording Fee: | $ 52.00 | | |
| Affidavit Fee: | $ 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed    02-16-2007 15:26
City Register File No.(CRFN):
2007000093799

*Annetta McGill*

*City Register Official Signature*

— Bargain and Sale Deed, with Covenant against Grantor's Acts — Individual or Corporation (Single Sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT. THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

---

THIS INDENTURE, made the 14th day of December, in the year 2006

BETWEEN Tanya Khursanova, 1750 E. 51st Street, Brooklyn, New York 11234

party of the first part, and Tanya Khursanova and Reina Mercado, 1750 E. 51st Street, Brooklyn, New York 11234
party of the second part,

WITNESSETH, that the party of the first part, in consideration of

dollars

paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors
and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being
in the

See Schedule A, Legal description, attached hereto and made a part hereof.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads
abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and
rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the
party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said
premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will
receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied
first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the
improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it
read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

_____

_____
Tanya Khursanova

_____
Reina Mercado

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of Kings, ss:

On the 14th day of December in the year 2006, before me, the undersigned, personally appeared Tanya Khursanova and Reina Mercado

, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

**SARAH B. GLUCKMAN**
Notary Public State of N.Y.
No. 01GLO6067971
Qualified in Kings County
Comm. Expires 2/8/2010

ACKNOWLEDGEMENT BY SUBSCRIBING WITNESS TAKEN IN NEW YORK STATE

State of New York, County of        , ss:
On the        day of        in the year        , before me, the undersigned, a Notary Public in and for said State, personally appeared        , the
subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in

(if the place of residence is in a city, include the street and street number if any, thereof), that he/she/they know(s)

to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of        , ss:

On the        day of        in the year        , before me, the undersigned, personally appeared

, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

SEAL

ACKNOWLEDGEMENT TAKEN OUTSIDE NEW YORK STATE

*State of        , County of        , ss:
*(Or insert District of Columbia, Territory, Possession or Foreign County)

On the        day of        in the year        , before me        the undersigned personally appeared

Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual make such appearance before the undersigned in the

(add the city or political subdivision and the state or country or other place the acknowledgement was taken).

## Bargain and Sale Deed With Covenants

**Title No.**

**Tanya Khursanova**
TO
**Tanya Khursanova and Reina Mercado**

DISTRIBUTED BY
YOUR TITLE EXPERTS
The Judicial Title Insurance Agency LLC
800-281-TITLE (8485)  FAX: 800-FAX-9396

SECTION:
BLOCK: 7895
LOT: 72
COUNTY OR TOWN: Kings

RETURN BY MAIL TO:

Tanya Khursanova and Reina Mercado
1750 E. 51st Street
Brooklyn, New York 11234

Title No. 11-23311

REEL 5810 PG 0156

# DESCRIPTION

ORIGINAL

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of East 51st Street distant 436 feet 4 inches southerly from the corner formed by the westerly side of East 51st Street with the southerly side of Avenue N;

RUNNING THENCE westerly and parallel with Avenue N part of the distance through a party wall, 100 feet;

THENCE southerly, parallel with East 51st Street, 40 feet 2 inches;

THENCE easterly again parallel with Avenue N, 100 feet to the westerly side of East 51st Street; and

THENCE northerly along the westerly side of East 51st Street, 40 feet 2 inches to the point or place of BEGINNING.

# D

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2004111601690001004E9680

### RECORDING AND ENDORSEMENT COVER PAGE

**Document ID:** 2004111601690001
**Document Type:** MORTGAGE
**Document Page Count:** 21

Document Date: 11-10-2004

**PAGE 1 OF 22**
Preparation Date: 11-22-2004

**PRESENTER:**
MADISON TITLE AGENCY, LLC
1125 OCEAN AVENUE
LAKEWOOD, NY 08701
212-808-9400
MTANY-014836

**RETURN TO:**
GREENPOINT MORTGAGE FUNDING, INC.
981 AIRWAY COURT, SUITE E
SANTA ROSA, CA 95403-2948

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 7895 | 72 | Entire Lot | 1750 EAST 51ST STREET |

Property Type: DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

CRFN _____ or Document ID _____ or _____ Year ____ Reel ____ Page ____ or File Number _____

### PARTIES

**MORTGAGER/BORROWER:**
TANYA KHURSANOVA
1750 EAST 51ST STREET
BROOKLYN, NY 11234

**MORTGAGEE/LENDER:**
MBRS
P.O. BOX 2026
FLINT, MI 48501

### FEES AND TAXES

| Mortgage | | |
|---|---|---|
| Mortgage Amount: | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 499,000.00 |
| Exemption: | | |
| TAXES: County (Basic): | $ | 2,495.00 |
| City (Additional): | $ | 4,990.00 |
| Spec (Additional): | $ | 0.00 |
| TASF: | $ | 1,247.50 |
| MTA: | $ | 1,247.50 |
| NYCTA: | $ | 0.00 |
| Additional MRT: | $ | 0.00 |
| TOTAL: | $ | 9,980.00 |

Recording Fee: $ 142.00
Affidavit Fee: $ 0.00
NYC Real Property Transfer Tax Filing Fee:
$ 0.00
NYS Real Estate Transfer Tax:
$ 0.00

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed 12-14-2004 14:41
City Register File No.(CRFN):
2004000770153

*Janetta M Hill*

*City Register Official Signature*

After recording please return to:

GreenPoint Mortgage Funding, Inc.
*[Company Name]*

*[Name of Natural Person]*

981 Airway Court, Suite E
*[Street Address]*

Santa Rosa, CA, 95403-2049
*[City, State Zip Code]*

——————— *[Space Above This Line For Recording Data]* ———————

Loan Number: 0085046688

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

MIN: 100013800850466885

**(A)**    **"Security Instrument."**  This document, which is dated November 10, 2004, together with all Riders to this document, will be called the "Security Instrument."

**(B)**    **"Borrower."** TANYA KHURSANOVA
, whose address is 1750 EAST 51ST STREET, BROOKLYN, NY 11234 sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C)**    **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.   FOR  PURPOSES  OF  RECORDING  THIS  MORTGAGE,  MERS  IS  THE MORTGAGEE OF RECORD.

**(D)**    **"Lender."** GreenPoint Mortgage Funding, Inc. will be called "Lender."  Lender is a corporation or association which exists under the laws of the State of New York. Lender's address is 100 Wood Hollow Drive, Novato, CA 94945.

**(E)**    **"Note."**  The note signed by Borrower and dated November 10, 2004, will be called the "Note."  The Note shows that I owe Lender  Four Hundred Ninety Nine Thousand  and 00/100ths Dollars (U.S. $499,000.00) plus interest and other amounts that may be payable.  I have promised to pay this debt in Periodic Payments and to pay the debt in full by December 1, 2034.

**(F)**    **"Property."**  The property that is described below in the section titled "Description of the Property," will be called the "Property."

G P M N D 0 0 8 5 0 4 6 6 8 8 1 1 7

**(G)** "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I)** "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Second Home Rider |
| ☒ 1-4 Family Rider | ☐ Revocable Trust Rider | ☐ Biweekly Payment Rider |
| ☒ Other(s) [specify] LEGAL DESCRIPTION | | |

**(J)** "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K)** "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L)** "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

**(N)** "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O)** "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q)** "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 2 of 37

MERS Modified Form 3033 01/01
1439NY 08/00 (Rev. 06/03)
©2000, The Compliance Source, Inc.

G P M W D 0 0 8 5 0 4 6 6 8 8 1 7

Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 1750 EAST 51ST STREET
[Street]

**BROOKLYN**                          , New York  11234                          . This Property is in
[City, Town or Village]                  [Zip Code]
Kings County. It has the following legal description:

AS MORE PARTICULARLY DESCRIBED IN EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF.

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 3 of 17

MERS Modified Form 3033  01A01
14301NY 08/00 (Rev. 06/03)
©2000, The Compliance Source, Inc.

G P M W D 0 0 8 5 0 4 6 6 8 8 1 1 7

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 4 of 17
MERS Modified Form 3033 01/01
14301NY 08/00 (Rev. 05/03)
©2000, The Compliance Source, Inc.

G P M W D 0 0 8 5 0 4 6 6 8 1 1 7

payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2.    **Application of Borrower's Payments and Insurance Proceeds.**  Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3.    **Monthly Payments For Taxes And Insurance.**

    (a)  **Borrower's Obligations.**  I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

        (1)  The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

        (2)  The leasehold payments or ground rents on the Property (if any);

        (3)  The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

        (4)  The premium for Mortgage Insurance (if any);

        (5)  The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

        (6)  If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 6 of 17

MERS Modified Form 3033 01/01
14301NY 04/00 (Rev. 06/02)
©2003, The Compliance Source, Inc.



G P M W D 0 0 8 5 0 4 6 6 8 8 1 1 7

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) **Lender's Obligations.** Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) **Adjustments to the Escrow Funds.** Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 26.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4.    **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreements; (b) in good faith, I argue or defend against the superior lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5.    **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and

New York Mortgage–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 7 of 17

MERS Modified Form 3033 01/01
1481NY 08/00 (Rev. 09/03)
©2000, The Compliance Source, Inc.



renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.   **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a)  **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as described in the definition of

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 8 of 17
MERS Modified Form 3033 01/01
14301NY 08/00 (Rev. 08/11)
©2000, The Compliance Source, Inc.



G P M W D 0 0 8 5 0 4 6 6 8 8 1 1 7

Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(h) **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture, proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 9 of 17

MERS Modified Form 3033 01/01
14591NY 08/00 (Rev. 04/05)
©2000, The Compliance Source, Inc.

G P M W D 0 0 8 5 0 4 6 6 8 8 1 1 7

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender every 14 days an amount equal to one-twenty-sixth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time, and may enter into agreements with other parties that share or change their risk, or reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has – if any – regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to (a) receive certain disclosures, (b) to request and obtain cancellation of the Mortgage insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be



lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full. The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12.  **Continuation Of Borrower's Obligations And of Lender's Rights.**

(a)  **Borrower's Obligations.**  Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b)  **Lender's Rights.**  Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if  (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
---THE COMPLIANCE SOURCE, INC.---
www.compliancesource.com
Page 12 of 17
MERS Modified Form 3033 01/01
14301NY 08/00 (Rev. 04/07)
©2000, The Compliance Source, Inc.

G P M W D 0 0 8 5 0 4 6 6 8 8 1 1 7

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 12 of 17

MERS Modified Form 3033 01/01
14301NY 08/00 (Rev. 06/03)
©2000, The Compliance Source, Inc.



G P M W D 0 0 8 5 0 4 6 6 8 8 1 1 7

ᵃᵃ

unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21.  **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat or release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.



## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of foreclosure and sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 15 of 17
MERS Modified Form 3033 01/01
14300YY 10/00 (Rev. 04/01)
©2000, The Compliance Source, Inc.



G P M W D 0 0 8 5 0 4 6 6 8 8 1 1 7

**25. Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 16 of this Security Instrument and in any rider signed by me and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                           TANYA KHURSANOVA              -Borrower


_____ (Seal)
                        -Borrower


_____ (Seal)
                        -Borrower


_____ (Seal)
                        -Borrower

------------------ [Acknowledgment on Following Page] ------------------

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 16 of 57

MERS Modified Form 3033 01/01
14361NY 08/00 (Rev. 08/03)
©2003, The Compliance Source, Inc.

G P M W D 0 0 8 5 0 4 6 6 8 8 1 1 7

State of New York §
                   § ss:
County of Kings    §

On the 10th day of November in the year 2004 before me, the undersigned, personally appeared TANYA KHURSANOVA

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

(Seal)

Signature

Office

ZIPPORAH KRANZ
Notary Public, State of New York
No. 01KR6039974
Qualified in Kings County
Commission Expires

6

New York Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 17 of 17
MERS Modified Form 3033 01/01
1430TNY 08/00 (Rev. 06/03)
©2000, The Compliance Source, Inc.

G P M W D 0 0 8 5 0 4 6 6 8 8 1 1 7

Loan Number: 0085046688

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **16th** day of **November, 2004**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **GreenPoint Mortgage Funding, Inc.**

(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

**1750 EAST 51ST STREET, BROOKLYN, NY 11234**

*[Property Address]*

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—    Page 1 of 3    Form 3170 01/01
www.compliancesource.com    ©2001, The Compliance Source, Inc.

G P M H D 0 0 8 5 0 4 6 6 8 8 1 1 7

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notices of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 2 of 3
Form 3170 01/01
14503MU 08/00
©2000, The Compliance Source, Inc.

G P M W D 0 0 8 5 0 4 6 6 8 8 1 1 7

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I.   **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)      _____ (Seal)
TANYA KHURSANOVA        -Borrower                             -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                             -Borrower

*[Sign Original Only]*

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                    Form 3170 01/01
www.compliancesource.com          Page 3 of 3          14503MU 08/00
                                                ©2000, The Compliance Source, Inc.

G P M W D 0 0 8 5 0 4 6 6 8 8 1 1 7

## SCHEDULE A CONTINUED

### LEGAL DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of East 51st Street distant 436 feet 4 inches southerly from the corner formed by the westerly side of East 51st Street with the southerly side of Avenue N;

RUNNING THENCE westerly and parallel with Avenue N part of the distance through a party wall, 100 feet;

THENCE southerly, parallel with East 51st Street, 40 feet 2 inches;

THENCE easterly again parallel with Avenue N, 100 feet to the westerly side of East 51st Street; and

THENCE northerly along the westerly side of East 51st Street, 40 feet 2 inches to the point or place of BEGINNING.

NOTE:  Being District , Section , Block 7895, Lot(s) 72, Tax Map of the Borough of Brooklyn, County of Kings.

NOTE:  Lot and Block shown for informational purposes only.

Issued by:
**Madison Title Agency, LLC**
1125 Ocean Avenue Lakewood, NJ 08701
Telephone: 212-808-9400    Fax: 212-808-9420



## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2004042700867001001EC8E3

## RECORDING AND ENDORSEMENT COVER PAGE

| | |
|---|---|
| Document ID: 2004042700867001 | |
| Document Type: MORTGAGE | Document Date: 03-18-2004 |
| Document Page Count: 6 | PAGE 1 OF 7 |
| | Preparation Date: 04-27-2004 |

**PRESENTER:**

INTEGRATED LOAN SERVICES
27 INWOOD RD.
ROCKY HILL, CT 06067
800-842-8423
JHART@ILS.COM

**RETURN TO:**

INTEGRATED LOAN SERVICES
27 INWOOD RD.
ROCKY HILL, CT 06067
800-842-8423
JHART@ILS.COM

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 7895 | 72 | Entire Lot | | 1750 EAST 51ST STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN _____ or Document ID _____ or ____ Year ____ Reel ____ Page ____ or File Number _____

### PARTIES

**MORTGAGER/BORROWER:**

TANYA KHURSANOVA
1750 EAST 51ST STREET
BROOKLYN, NY 11234

**MORTGAGEE/LENDER:**

FLEET NATIONAL BANK
315-317 COURT STREET, PO BOX 3092
UTICA, NY 13502

### FEES AND TAXES

| Mortgage | | | | Recording Fee: $ | 67.00 |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 230,000.00 | | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 230,000.00 | | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | | $ | 0.00 |
| TAXES: | | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 1,150.00 | | $ | 0.00 |
| City (Additional): | $ | 2,300.00 | | | |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 575.00 | | | |
| MTA: | $ | 550.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| TOTAL: | $ | 4,575.00 | | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK

Recorded/Filed        06-01-2004 14:25
City Register File No.(CRFN):
              2004000335265

*Rochelle Patrice*

*City Register Official Signature*

This is a Credit Line Mortgage under
Section 281 of the Real Property Law.

**Fleet Bank**

Open-End Mortgage

(for use in NY)

**Maximum Principal Sum:** U.S. $
$230,000.00

**Maturity Date:**
03/18/24

**Borrower(s)/Mortgagor(s):**
TANYA KHURSANOVA

At the option of the Lender the Maturity Date may
be extended to: ___03/18/34___

**Property Address:**
1750 51ST ST E KINGS BROOKLYN, NY 11234

THIS MORTGAGE is between each Mortgagor signing below ("Borrower") and the following Mortgagee ("Lender"):

Name of Lender:

FLEET NATIONAL BANK, PRINCIPALLY LOCATED IN RHODE ISLAND

Lender's Address for Notices:

CONSUMER LOAN OPERATIONS
315-317 COURT STREET
P.O. BOX 3092
UTICA, NY 13502

BORROWER has entered into a Fleet Line Agreement ("Agreement") with Lender, dated the same date as this Mortgage, which is a consumer revolving loan agreement that provides for an open-end credit plan (as defined in the Truth in Lending Act). Under the Agreement, Borrower may obtain advances (including re-advances of any repaid principal) and is indebted to Lender for all amounts advanced and outstanding from time to time. All amounts advanced under the Agreement or this Mortgage, if not sooner paid, are due and payable at the Maturity Date. The maximum principal amount that is or may be secured by this Mortgage at any time and from time to time shall not exceed the Maximum Principal Sum shown above.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Agreement, together with interest thereon, and all renewals, extensions, and conversions of or modifications to the Agreement; the payment of all other sums provided in the Agreement or advanced to protect the security of this Mortgage; and the performance of all other covenants and agreements of Borrower contained herein and in the Agreement, for consideration paid, Borrower hereby mortgages, grants, and conveys to Lender, its successors and assigns forever, with statutory power of sale (if applicable) and with mortgage covenants, the property described in Exhibit A to this Mortgage (the "Property"). If this Mortgage is given on the statutory condition (except in Florida). If the Property is located in New York, Lender's rights under this Mortgage are in addition to and not exclusive of rights conferred under Sections 254, 271, 272 and 291-F of the New York Real Property Law.

## PROPERTY UNDER MORTGAGE

The Property includes: all improvements erected on the Property; all of Borrower's rights and privileges to all land, water, streets, and roads next to and on all sides of the Property (called "easements, rights, and appurtenances"); all rents from the Property; all proceeds (to the extent necessary to repay the amount Borrower owes) from the Property, including insurance proceeds and proceeds from the taking of all or any part of the Property by a government agency or anyone else authorized by law; and all property and rights described above that Borrower acquires in the future.

## OWNERSHIP OF PROPERTY

Borrower promises that Borrower lawfully owns the Property and has the right to mortgage, grant and convey the Property, and that there are no claims or charges (called "encumbrances") against the Property, except for encumbrances disclosed to Lender. Borrower is fully responsible for any losses Lender suffers because someone other than the Borrower has some of the rights in the Property that the Borrower claims, and Borrower will defend Borrower's ownership of the Property against any such claim of rights.

KHURSANOVA, TANYA

Record and Return To:
Integrated Loan Services
27 Inwood Road
Rocky Hill, CT 06067

24300 Rev. 11/2002

Page 1 of 6

Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, and Other Charges.** Borrower shall promptly pay, when due, the principal and interest indebtedness secured by this Mortgage and any other charges due under the Agreement.

2.  **Application of Payments.** Unless otherwise provided in the Agreement or required by applicable law, all payments received by Lender shall be applied first to billed finance charges, then to other charges that have not been added to principal, then to principal, and finally to unbilled finance charges.

3.  **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage, including Borrower's covenants to make payments when due, and will not incur any additional indebtedness under any such mortgage, deed of trust or other security agreement. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property that may attain priority over this Mortgage, and any leasehold payments or ground rents. Borrower will notify all prior mortgagees of Lender's Mortgage.

4.  **Hazard and Flood Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require. Borrower shall maintain coverage in an amount equal to the smallest of: (a) the amount of any obligation having priority over this Mortgage, plus the Maximum Principal Sum; or (b) the maximum insurable value of the Property, but in no event shall such amount be less than the amount necessary to satisfy any co-insurance requirement contained in the insurance policy; or (c) such amount as may be required by applicable law. If the Property is located in an area identified by federal officials as having special flood hazards and where flood insurance is available under the National Flood Insurance Act, Borrower will keep Property insured against loss by flood.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender, provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgagee clause in favor of, and in a form acceptable to, Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Mortgage.

5.  **Preservation and Maintenance of Property; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property. If this Mortgage is on a unit in a condominium or planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents. Borrower shall promptly pay, when due, all assessments imposed by the owners' association or other governing body of any condominium project of which the Property is a part, pursuant to the provisions of the declaration, by-laws, regulations or other constituent document of the condominium project. As long as the owners' association or other governing body maintains a "master" or "blanket" policy on the condominium project that provides insurance coverage against fire, hazards included within the term "extended coverage," and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then Borrower's obligation under paragraph 4 to maintain hazard insurance coverage on the Property is deemed satisfied and the provisions of paragraph 4 regarding application of hazard insurance proceeds shall be superseded by any provisions of the declaration, by-laws, regulations or other constituent document of the project or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect. Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss of the Property, whether to the unit or to common elements, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Mortgage, with the excess, if any, paid to Borrower.

If the Property is part of a condominium project, Borrower shall not, except after notice to Lender and with Lender's prior written consent, partition or subdivide the Property, or consent to (a) the abandonment or termination of the project, except for abandonment or termination provided by law in the case of a taking by condemnation or eminent domain; (b) any material amendment of the declaration, by-laws or regulations of the owners' association or other governing body, or equivalent constituent document of the project, including, but not limited to, any amendment that would change the percentage interests of the unit owners in the project; or (c) the effectuation of any decision by the owners' association or other governing body to terminate professional management and assume self-management of the project.

6.    **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced that materially affects Lender's interest in the Property, the Lender, at Lender's option, on notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as Lender deems necessary to protect its interest. Any amounts disbursed by Lender pursuant to this paragraph 6 shall become additional principal indebtedness of Borrower secured by this Mortgage and Borrower shall pay interest on such amounts at the rate in effect from time to time under the Note. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder, and any action taken by Lender hereunder shall not be a waiver of, or preclude the exercise of, any of the rights or remedies accorded to Lender.

7.    **Inspection.** Lender may make or cause to be made reasonable entries on and inspection of the Property, provided that Lender shall give Borrower notice prior to such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

8.    **Condemnation.** The process of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, is hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien that has priority over this Mortgage.

9.    **Borrower Not Released; Forbearance By Lender Not A Waiver.** Extension of the time for payment or modification of any of the other terms of payment of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify the terms of payment of the sums secured by the Mortgage by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

10.   **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to the benefit of, the respective successors and assigns of Lender and Borrower. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signed this Mortgage, but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage; (b) is not personally obligated to pay the sums secured by this Mortgage; and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forebear or make any other accommodations with regard to the terms of this Mortgage and the Note without the Borrower's consent and without releasing the Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

11.   **Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice required or permitted to be given to Borrower under this Mortgage shall be sent to Borrower by regular mail addressed to Borrower at the address for notices specified in the Agreement; and (b) any notice required or permitted to be given to Lender under this Mortgage (including notices given pursuant to Pennsylvania Consolidated Statutes Annotated, title, 42, Section 8143 or to Rhode Island G.L. 34-25-10(b) and 34-25-11, if applicable) shall be sent to Lender by regular mail addressed to Lender at Lender's Address for Notices identified at the beginning of this Mortgage. Either party may change its address to which the other party is to send notices by giving the other party notice of the new address in accordance with this paragraph 11. Any notice provided for in this Mortgage shall be in writing and shall be deemed to have been given when mailed, postage prepaid, addressed in the manner designated herein.

29300B Rev. 11/2002                                      Page 3 of 6

12.    **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. Notwithstanding the foregoing, nothing herein shall limit the applicability of federal law to this Mortgage. In the event that any provision of this Mortgage or the Agreement conflicts with applicable law, the conflicting provision shall be deemed to be amended to afford the Lender the maximum rights allowed by law. No conflict with applicable law shall affect other provisions of this Mortgage or the Agreement that can be given effect without the conflicting provision and, to this end, the provisions of this Mortgage or the Agreement are declared to be severable.

13.    **Borrower's Copy.** Borrower shall be furnished a conformed copy of this Mortgage at the time of execution or after recordation hereof.

14.    **Events of Default.** Borrower shall be in default under this Mortgage on the occurrence of any of the following events: (a) failure by Borrower to pay when due any amount owing under the Agreement or this Mortgage if the failure continues for twenty-one (21) days after written notice of the failure is mailed to the Borrower (if the Property is located in Maine, such notice will not be sent until at least 10 days after the payment is due; if the Property is located in Connecticut, this Mortgage is subject to one or more prior mortgages, and there were loan fees, points, or other prepaid finance charges imposed in connection with the Agreement, such notice will not be sent until at least 39 days after the payment is due); (b) Borrower makes any fraudulent statement or material misrepresentation in connection with the Agreement or this Mortgage; (c) any action or inaction on Borrower's part adversely affects the Property or the Lender's rights in the property (e.g., a transfer of title to or sale of an interest in the Property without the Lender's consent; failure to maintain insurance or pay taxes on the Property; action by the Borrower resulting in the filing of a mortgage or lien that is or becomes senior to Lender's Mortgage; action by the Borrower that jeopardizes the Lender's security for future advances; death of all individuals obligated on the Agreement; a taking of the Property by eminent domain; foreclosure by a prior lienholder; or if the Lender's security interest is adversely affected due to: (i) waste, destructive use of or Borrower's failure to maintain the Property; (ii) Borrower's illegal use of the Property that subjects it to seizure; (iii) the filing of a judgement against Borrower; (iv) death of one of the joint obligors on the Agreement (except that this event of default shall not apply if the Property is located in Connecticut); or (v) Borrower's moving out of the Property and failing to return within twenty-one (21) days after written notice is mailed to the Borrower).

15.    **Acceleration; Remedies.** On default, Lender may declare all sums secured by this Mortgage immediately due and payable, and Lender may invoke any of the remedies permitted under applicable law, including the STATUTORY POWER OF SALE, if any. If the Property is located in Florida, Lender shall be entitled to collect all costs and expenses incurred in collection or foreclosure, including attorneys' fees equal to ten percent (10%) of the principal sum or such larger amount as may be reasonable and just, and also all costs, expenses and attorneys' fees incurred in any appellate and bankruptcy proceedings. If Lender invokes a STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage in such order as Lender may determine; and (c) the excess, if any, to the person or persons legally entitled thereto.

16.    **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 15 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable. On acceleration under paragraph 15 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter on, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

17.    **Waiver of Homestead; Dower and Curtesy.** When applicable, and as permitted by law, Borrower hereby waives all rights of homestead in the Property and relinquishes all rights of dower and curtesy in the Property.

18.    **Release.** Until all amounts secured are paid in full and the Agreement is canceled, this Mortgage will remain in effect, even though the loan balance may be reduced to zero from time to time. This Mortgage shall be deemed to be satisfied, and Lender shall give Borrower a discharge therefor, when: (a) all sums secured by this Mortgage have been paid in full, and Borrower has paid Lender for the recording cost of filing the satisfaction of mortgage; and (b) the Lender has no continuing obligation to make additional advances.

19.    **New York Lien Law.** If the Agreement and Mortgage are governed by New York law, the Borrower will receive all amounts advanced under the Agreement subject to the trust fund provisions of Section 13 of the New York Lien Law. Borrower will use any money received from the Lender under the Agreement for the purpose of paying the cost of any improvements made to the Property before using the money for any other purpose.

## REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien that has priority over this Mortgage to give notice to Lender, at Lender's address set forth at the beginning of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

**NOTICE TO CONSUMER:** 1. Do not sign this Mortgage before you read it.
2. You are entitled to a copy of this Mortgage.

IN WITNESS WHEREOF, each of the undersigned has executed this Mortgage under seal this __18TH__ day of ___MARCH___ (month), __2004__. WE AGREE AND ACKNOWLEDGE THAT WE HAVE RECEIVED TRUE COPIES OF THIS MORTGAGE AND ANY RIDER.

(Signature of Witness One)
Printed Name:

(Mortgagor/Borrower Signature)
Printed Name: TANYA KHURSANOVA

(Signature of Witness Two)
Printed Name:

(Signature of Witness One)
Printed Name:

(Mortgagor/Borrower Signature)
Printed Name:

(Signature of Witness Two)
Printed Name:

(Signature of Witness One)
Printed Name:

(Mortgagor/Borrower Signature)
Printed Name:

(Signature of Witness Two)
Printed Name:

(Signature of Witness One)
Printed Name:

(Mortgagor/Borrower Signature)
Printed Name:

(Signature of Witness Two)
Printed Name:

(Signature of Witness One)
Printed Name:

(Mortgagor/Borrower Signature)
Printed Name:

(Signature of Witness Two)
Printed Name:

State of New York
County of KINGS

On the 18 day of MARCH in the year 2004 before me, the undersigned, a notary public in and for said state, personally appeared TANYA KHURSANOVA

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

ESTHER R HAKALIR
Notary Public, State of New York
No. 24-4900377
Qualified in Kings County
Commission Expires July 13, 2007 **[Seal]**

Signature and Office of individual taking acknowledgement
Print Name: Esther R. Hakalir
My Commission Expires: 7-13-07

213000 Rev. 11/2002

**EXHIBIT A**
**TO**
**MORTGAGE**

**Date of Mortgage:**

03/18/04

**Borrower(s)/Mortgagor(s):**

TANYA KHURGANOVA

**Mortgagee:**

FLEET NATIONAL BANK,
PRINCIPALLY LOCATED IN RHODE ISLAND

**Property Address:**

1750 51ST ST E KINGS BROOKLYN, NY 11234

The Property is located in _BROOKLYN_ _____ (city/town), _KINGS_ _____ (county),
_NEW YORK_ _____ (state) and is bounded and described as follows:

Being the same property conveyed and described in a Deed
(Se recorded among the land records of the County set forth above:

Deed recorded in BOOK _5810_  PAGE _154_
BLOCK _7895_ LOT _72_

Remit all Legal Documents to: --------------- Fleet Bank
Consumer Loan Operations
315-317 Court Street
P.O. Box 3092
Utica, NY 13502

Property is improved by
a 1 family dwelling only

**Pennsylvania Certification of Residence**

I hereby certify that the precise residence of the Mortgagee, _____ ,

is: _____

_____

Name

_____

Title

21300E Rev. 11/2002





# Property Tax Bill
## Quarterly Statement
### Activity through February 22, 2013

**Owner name:** MERCADO, REINA
**Property address:** 1750 E. 51ST ST.
**Borough, block & lot:** BROOKLYN (3), 07895, 0072

**Mailing address:**
MERCADO, REINA
1750 E. 51ST ST.
BROOKLYN, NY 11234-3817

## Statement Billing Summary

| | |
|---|---:|
| Previous charges | $1,367.48 |
| Amount paid | $-1,367.48 |
| Interest | $0.00 |
| **Unpaid charges, if any** | **$0.00** |
| Current charges | $1,367.48 |
| **Total amount due by April 1, 2013** | **$1,367.48** |
| **Total property tax amount due April 1, 2013 from** | |
| **Countrywide Home Loans** | **$1,367.48** |
| **You, the property owner** | **$0.00** |

400.01
671

---

This statement is for your information only.



### Pay today the easy way
### nyc.gov/payonline

**Total amount due by April 1, 2013 if you still have a mortgage** $0.00
**Total amount due by April 1, 2013 if you no longer have a mortgage** $1,367.48

**Amount enclosed:** [ ]

\*BWNFFBV
\*9645778130222014\*

MERCADO, REINA
1750 E. 51ST ST.
BROOKLYN NY 11234-3817

**Mail payment to:**
NYC Department of Finance
P.O. Box 680
Newark, NJ 07101-0680

9645778130222  01  3078950072  0000000136748  0000000000000  130401270081001    5



**Statement Details**

February 22, 2013
Mercado, Reina
1700 E. 51st St.
3-07896-0072
Page 2

| Previous Charges | Date | Amount |
|---|---|---|
| Total previous charges including interest and payments | | $0.00 |

| Current Charges | Activity Date | Date | Amount |
|---|---|---|---|
| Finance-Property Tax | | 04/01/2013 | $1,367.48 |
| Total current charges | | | $1,367.48 |

### Annual Property Tax Detail

Tax class  1 -  Small Home, Less Than 4 Families    Tax rate
  Current tax rate                                   18.6690%

Estimated market value  $553,000

| | Billable assessed value | | tax rate | | Taxes |
|---|---|---|---|---|---|
| Tax before exemptions and abatements | $28,891 | X | 18.6690% | = | $5,365 |
| Tax before abatements | | | | | $5,365 |
| Annual property tax | | | | | $5,365 |

### Home banking payment instructions:

1. **Log** into your bank or online bill pay website
2. **Add** the new payee: NYC DOF Property Tax.  Enter your account number, which is your boro, block and lot, as it appears here: 3-07895-0072.  You may also need to enter the address for the Department of Finance.  The address is P.O. Box 680, Newark, NJ 07101-0680.
3. **Schedule** your online payment using your checking or savings account

### Did your mailing address change?

If so, please visit us at **nyc.gov/changemailingaddress** or call **311**.

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.







## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2007031600030001001EE4AA

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 11 |
|---|---|

**Document ID:** 2007031600030001  **Document Date:** 12-13-2006  **Preparation Date:** 03-16-2007
**Document Type:** MORTGAGE
**Document Page Count:** 10

| PRESENTER: | RETURN TO: |
|---|---|
| FISERV LENDING SOLUTIONS | FISERV LENDING SOLUTIONS |
| 27 INWOOD RD. | 27 INWOOD RD. |
| ROCKY HILL, CT 06067 | ROCKY HILL, CT 06067 |
| 800-842-8423 | 800-842-8423 |
| customerservice@ils.com | customerservice@ils.com |

### PROPERTY DATA
| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 7895 | 72 | Entire Lot | | 1750 E 51ST ST |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA
CRFN_____  or  Document ID_____  or _____  Year_____ Reel____ Page_____ or File Number_____

### PARTIES
| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| REINA M. MERCADO | BANK OF AMERICA, N.A. |
| 1750 E 51ST ST | 100 NORTH TRYON STREET |
| BROOKLYN, NY 11237 | CHARLOTTE, NC 28255 |

### FEES AND TAXES
| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 245,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 245,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,225.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 2,450.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 612.50 | | |
| MTA: | $ | 705.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 4,992.50 | | |
| Recording Fee: | $ | 87.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK
Recorded/Filed   03-27-2007 16:56
City Register File No.(CRFN):
2007000158676

*Annette M Hill*
City Register Official Signature

WHEN RECORDED MAIL TO:



Mercado, Reina M

**Record and Return To:**
**Fiserv Lending Solutions**
**27 Inwood Road**
**ROCKY HILL, CT 06067**

**FOR RECORDER'S USE ONLY**

## MORTGAGE ~~BARCH #4874878434~~

**DEFINITIONS.** The following words are used often in this document. When they are used, they will have the following meanings:

**Borrower.** REINA M MERCADO and all other persons and entities signing the Credit Agreement will sometimes be called "Borrower".

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement signed by Borrower and dated December 13, 2006 with a credit limit of $245,000.00. The words "Credit Agreement" include all renewals of, extensions of, modifications of, and substitutions for the credit agreement. The maturity date of this Security Instrument is December 13, 2031. Specifically, without limitation, this Security Instrument secures a revolving line of credit, which obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Credit Agreement. **NOTICE TO OWNER:  THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.**

**Lender.** Bank of America, N.A. will be called "Lender."

**Mortgage.** This Mortgage between Owner and Lender will be called the "Mortgage".

**Owner.** REINA M MERCADO sometimes will be called "Owner" and sometimes simply "I" or "me."

**Property.** The property that is described in the section titled "DESCRIPTION OF THE PROPERTY" will be called the "Property".

**Related Documents.** All promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Sums Secured will be called "Related Documents".

**Security Instrument.** This mortgage document will also be called the "Security Instrument."

**Sums Secured.** The amounts described below in the section titled "OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY" sometimes will be called the "Sums Secured."

The Property covered by this Mortgage is improved by a 1 ~~or 2~~ family residence only.

**NOTICE:   THIS SECURITY INSTRUMENT SECURES AN AGREEMENT WHICH CONTAINS A PROVISION**

**MORTGAGE**

ALLOWING FOR CHANGES IN THE INTEREST RATE. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.

THIS SECURITY INSTRUMENT IS A CREDIT LINE MORTGAGE AS DEFINED IN SECTION 281 OF THE NEW YORK REAL PROPERTY LAW. IT SECURES AN INDEBTEDNESS UNDER THE DEFINITION OF CREDIT AGREEMENT, LOCATED IN THE DEFINITIONS SECTION, WHICH REFLECTS THE FACT THAT THE PARTIES REASONABLY CONTEMPLATE ENTERING INTO A SERIES OF ADVANCES OR ADVANCES, PAYMENTS, AND READVANCES. THE CREDIT AGREEMENT LIMITS THE AGGREGATE AMOUNT AT ANY TIME OUTSTANDING TO THE MAXIMUM AMOUNT SET FORTH ABOVE IN THE DEFINITION OF CREDIT AGREEMENT.

THIS MORTGAGE IS DATED December 13, 2006, BETWEEN REINA M MERCADO (sometimes below will be called "Owner," "Borrower," "I," or "me"); and Bank of America, N.A., whose address is 100 North Tryon Street, Charlotte, NC 28255 (sometimes below will be called "Lender").

OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY. I mortgage, grant and convey to Lender the Property, subject to the terms of this Security Instrument, to have and to hold all of the Property to Lender, and to its successors and assigns, forever. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. Those rights that the law gives to lenders who hold mortgages on real property include those rights known as "Mortgage Covenants." I am giving Lender these rights to protect Lender from possible losses that might result if I fail to do any of the following:

   (A)  Pay all the amounts that I owe Lender as stated in the Credit Agreement;

   (B)  Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

   (C)  Keep all of my other promises and agreements under this Security Instrument.

DESCRIPTION OF THE PROPERTY. I mortgage, grant and convey to Lender the Property described in (A) through (I) below.

   (A)  This Property is located in KINGS County, State of New York:

        See Exhibit A, which is attached to this Security Instrument and made a part of this Security Instrument as if fully set forth herein.

The Real Property or its address is commonly known as 1750 E 51ST ST, BROOKLYN, NY 11237-0000.

   (B)  All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

   (C)  All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the Property;"

   (D)  All rents and royalties from the Property described in subparagraph (A) of this section;

   (E)  All mineral, oil and gas rights and profits, water rights and stock that are part of the Property described in subparagraph (A) of this section;

   (F)  All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;

   (G)  All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;

   (H)  All of the rights and property described in subparagraphs (B) through (G) of this section that I acquire

in the future; and

(I)  All replacements of or additions to the Property described in subparagraphs (B) through (I) of this section.

**OWNER'S RIGHT TO MORTGAGE THE PROPERTY AND OWNER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY.** I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**THIS MORTGAGE IS GIVEN TO SECURE  (A) PAYMENT OF THE SUMS SECURED AND  (B) PERFORMANCE OF ALL OF MY OBLIGATIONS UNDER THIS MORTGAGE.    I PROMISE AND I AGREE WITH LENDER AS FOLLOWS:**

**OWNER'S PROMISE TO PAY.**  I will pay to Lender on time principal and interest due under the Credit Agreement.

**OWNER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS.**  I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will do this by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.)  If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a "lien." I must promptly pay or satisfy a superior lien unless: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give me a notice identifying the superior lien. I will then pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**OWNER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE.**  I will obtain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. If the Property is or becomes located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, I agree to obtain and maintain Federal Flood Insurance for the maximum amount of your credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender. I agree to maintain such insurance for the term of the loan. NOTICE: In no event, however, pursuant to Section 38.9 of the New York Banking Board Regulations, will I be required to provide hazard insurance in excess of the replacement value of the buildings and other improvements on the Property. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgagee clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender.

## MORTGAGE
### (Continued)

Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that is owed to Lender under the Credit Agreement and under this Security Instrument. If any of the proceeds remain after the amount that is owed to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which is owed to Lender under the Credit Agreement, that use will not delay the due date or change the amount of any of the monthly payments under the Credit Agreement. However, I and Lender may agree in writing to those delays or changes.

If Lender acquires the Property as provided below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

**OWNER'S OBLIGATION TO MAINTAIN THE PROPERTY.** I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate.

**LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY; MORTGAGE INSURANCE.** If I fail to comply with any provision of this Security Instrument, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on my behalf may, but will not be required to, take any action that Lender thinks to be appropriate. Any amount that Lender spends or incurs in so doing will bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of my repayment. All such expenses, at Lender's option, will (A) be payable on demand, (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due either during the term of any applicable insurance policy or during the remaining term of the Credit Agreement, or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. This Security Instrument also will secure payment of these amounts. The rights provided for in this paragraph will be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any action taken by Lender under this paragraph will not constitute a cure of any default so as to bar Lender from any remedy that it otherwise would have had under this Security Instrument.

If Lender required mortgage insurance as a condition for my loan, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**POSSESSION AND USE.** Until in default, I may remain in possession and control of and operate and manage the Property.

**LENDER'S RIGHT TO INSPECT THE PROPERTY.** Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before, or at the time

**MORTGAGE**
(Continued)

an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY.** A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which is owed to Lender under the Credit Agreement, that use will not delay the due date or change the amount of any of the monthly payments under the Credit Agreement. However, Lender and I may agree in writing to those delays or changes.

**CONTINUATION OF OWNER'S OBLIGATIONS AND OF LENDER'S RIGHTS.**

**Owner's Obligations.** Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Credit Agreement or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Credit Agreement and under this Security Instrument.

Lender may allow delays or changes for a person who takes over my rights and obligations, even if Lender is not requested to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Credit Agreement or under this Security Instrument, even if Lender is requested to do so.

**Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right to demand immediate payment in full of the amounts that are owed to Lender under the Credit Agreement or under this Security Instrument.

**OWNER'S OBLIGATIONS AND THOSE OF PERSONS TAKING OVER OWNER'S OBLIGATIONS.** Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Owner, each of us is fully obligated to keep all of Owner's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together.

**LOAN CHARGES.** If the Credit Agreement secured by this Security Instrument is subject to a law which sets maximum Credit Agreement charges, and that law is finally interpreted so that the interest or other Credit Agreement charges collected or to be collected in connection with the Credit Agreement exceed permitted

# MORTGAGE
## (Continued)

limits: (A) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Credit Agreement or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Credit Agreement.

**LEGISLATION AFFECTING LENDER'S RIGHTS.** If a change in applicable law would make any provision of the Credit Agreement or this Security Instrument unenforceable, Lender may require immediate payment in full of all Sums Secured by this Security Instrument as that phrase is defined above. If Lender requires immediate payment in full under this Paragraph, Lender will take the steps and may act as specified below.

**NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT.** Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class, certified or registered mail unless applicable law requires use of another method. The notice will be addressed to me at the address shown at the beginning of this Security Instrument. A notice will be given to me at a different address if I give Lender notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to the Lender's address shown at the beginning of this Security Instrument. A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph or of applicable law.

**LAW THAT GOVERNS THIS SECURITY INSTRUMENT.** With respect to interest (as defined by federal law) this Security Instrument will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Carolina without regard to its conflicts of laws provisions. In all other respects, this Security Instrument will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. The loan transaction that is evidenced by the Credit Agreement and this Security Instrument has been approved, made, and funded, and all necessary loan documents have been accepted by Lender in the State of North Carolina.

**OWNER'S COPY.** I will be given one conformed copy of the Credit Agreement and of this Security Instrument.

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED.** Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Owner is sold or transferred and Owner is not a natural person. However, Lender will not require immediate payment in full if this is prohibited by federal law as of the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph, Lender will give me a notice which states this requirement. The notice will give me at least thirty (30) days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**DEFAULT.** At Lender's option, I will be in default under this Security Instrument if any of the following happen: (A) I commit fraud or make a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about my income, assets, liabilities, or any other aspects of my financial condition. (B) I do not meet the repayment terms of the Credit Agreement. (C) My action or inaction adversely affects the collateral for the credit line account or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the Property, failure to pay taxes, death of all persons liable on the credit line account, transfer of title or sale of the dwelling, creation of a lien on the dwelling without our permission, foreclosure by the holder of another lien, or

**MORTGAGE**
**(Continued)**

the use of funds or the dwelling for prohibited purposes.

**LENDER'S RIGHTS UPON DEFAULT.** If I am in default under this Security Instrument, this is what Lender may do, in addition to any other rights or remedies provided by law:

**Accelerate Payment.** Lender shall have the right at its option without notice to me to require that I pay immediately the entire amount then remaining unpaid under the Credit Agreement and under this Security Instrument, including any prepayment penalty which I would be required to pay.

**Lender's Rights to Rental Payments and to Take Possession of the Property.** If Lender requires immediate payment in full, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (1) collect the rental payments, including overdue rental payments, directly from the tenants; (2) enter on and take possession of the Property; (3) manage the Property; and (4) sign, cancel and change leases. If Lender notifies the tenants that Lender has the right to collect rental payment Lender has the right to collect rental payment directly from them under this Paragraph, I agree that the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Security Instrument. All rental payments collected by Lender or by a receiver, other than any rent paid by me, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees, and the cost of any necessary bonds.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing my interest in all or any part of the Property.

**My Payment of Rent.** If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining on the Sums Secured after application of all amounts received from the exercise of the rights provided in this section.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of my obligations under this Security Instrument, after my failure to do so, that decision by Lender will not affect Lender's right to declare me in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce such terms of this Security Instrument, Lender will be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Sums Secured. Expenses covered by this paragraph include, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. I also will pay any court costs, in addition to all other sums provided by law.

**LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT.** When Lender has been paid all

**MORTGAGE**
**(Continued)**

amounts due under the Credit Agreement and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

**AGREEMENTS ABOUT NEW YORK LIEN LAW.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of the New York Lien Law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Instrument:

**Amendments.** What is written in this Security Instrument and in the Related Documents is my entire agreement with Lender concerning the matters covered by this Security Instrument. To be effective, any change or amendment to this Security Instrument must be in writing and must be signed by whoever will be bound or obligated by the change or amendment. Lender and I agree that at any time before the expiration of the draw period specified in the Credit Agreement, upon Lender's discretion, the term of the draw period may be extended or modified.

**Merger.** There shall be no merger of the interest or estate created by this Security Instrument with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Time is of the Essence.** Time is of the essence in the performance of this Security Instrument. This means that all deadlines for performance provided under this Security Instrument must be strictly complied with and that failure to do so will result in a default.

**Waiver of Homestead Exemption.** I hereby release and waive all rights and benefits of the homestead exemption laws of the State of New York as to all Sums Secured by this Security Instrument.

**Waivers and Consents.** Lender will not be deemed to have waived any rights under this Security Instrument unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right will operate as a waiver of such right or any other right. A waiver by any party of a provision of this Security Instrument will not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and me, will constitute a waiver of any of Lender's rights or any of my obligations as to any future transactions. Whenever consent by Lender is required in this Security Instrument, the granting of such consent by Lender in any instance will not constitute continuing consent to later instances where such consent is required.

**I ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS SECURITY INSTRUMENT. AND I AGREE TO ITS TERMS.**

**OWNER:**

x _Reina M. Mercado_
**REINA M MERCADO**

**MORTGAGE**
**(Continued)**

Loan No: 88271071917789

Page 9

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____     )
                                     ) SS
COUNTY OF _____       )

On the ____ day of _____ in the year 20__ before me, the undersigned, a Notary Public in and for said State, personally appeared **REINA M MERCADO**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his or her capacity, and that by his or her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

By_____          My commission expires _____

Notary Public
State of New York
County of Kings
Comm. 01FL6122206
Expires February 7, 2009

G352A994

# SCHEDULE A

ALL THAT CERTAIN PROPERTY SITUATED IN THE CITY OF NEW YORK,
COUNTY OF KINGS, AND STATE OF NEW YORK BEING MORE
PARTICULARLY DESCRIBED IN A DEED RECORDED 02/16/2007 CRFN
2007000093799 IN THE OFFICE OF THE CITY REGISTER.

THIS IS OR WILL BE IMPROVED BY A 1 FAMILY DWELLING ONLY.

BLOCK 7895 LOT 72

KNOWN AS: 1750 E 51ST ST



**Bank of America**  Home Loans

BANK OF AMERICA, N.A.
P.O. BOX 26078
GREENSBORO, NC 27420

+ 0381657 000036995 094SH2-F7
REINA M MERCADO
1750 E 51ST ST
BROOKLYN NY 11234-3817

| Account Number: 6827 1071 917799 | |
|---|---|
| Page 1 of 2 | |
| **Variable Rate Snapshot** | |
| Statement Period: 05/12/2012-06/10/2012 | |
| Previous Outstanding Variable Balance: | $247,670.04 |
| New Outstanding Variable Balance: | $247,651.64 |
| Credit Limit: | $245,000.00 |
| Total Principal Balance: | $247,096.59 |
| Available Credit: | $0.00 |
| Current Payment Due: | $554.95 |
| Past Due Amount: | $0.00 |
| Total Minimum Payment Due: | $554.95 |
| Payment Due Date: | 07/05/2012 |

Payment shown above does not include Fixed Rate Loan Options. Any Fixed Rate Loan Options you have will be billed separately.

## Bank of America Equity Maximizer

### Account Summary

| Account Type | Principal Balance | Account Number |
|---|---|---|
| Variable Rate: | $247,096.59 | 6827 1071 917799 |

Fixed Rate Loan Options are available. Please call customer service for current rates. Information about your transactions are included on the next page of this statement.

### Variable Rate Portion Summary

| ANNUAL PERCENTAGE RATE | 2.74% |
|---|---|
| Daily Periodic Rate | .0074863% |
| Corresponding Annual Percentage Rate | 2.74% |
| Days in Billing Cycle | 30 |
| Periodic FINANCE CHARGE | $554.95 |
| Other FINANCE CHARGE | $0.00 |
| Outstanding Fees (due upon payoff) | $0.00 |

### Messages

Your outstanding principal balance exceeds your credit line. We will be unable to advance additional funds on your line of credit until your outstanding principal balance is reduced.

### Customer Service Information

**Billing Error Notices:**
Bank of America, N.A.
Attention: Billing Error Notice
PO Box 941657
Simi Valley, CA 93094-1657

**General Inquiries:**
Bank of America, N.A.
P.O. Box 21846
Greensboro, NC 27420-1846
www.bankofamerica.com

1.800.934.LOAN (5626) Home Equity
Customer Service
TDD 1.866.345.1285
Se habla Español: 1.800.688.6086
Customer Service Hours:
Monday through Friday
7:00 a.m. - 7:00 p.m. Local Time

---

### Payment Coupon - Please return with your payment

REINA M MERCADO
1750 E 51ST ST
BROOKLYN NY 11234-3817

| Minimum Payment Due | $554.95 |
|---|---|

| Equity Maximizer Number: | 6827 1071 917799 |
|---|---|
| Current Payment Due: | $554.95 |
| Past Due Amount: | $0.00 |
| Total Minimum Payment Due: | $554.95 |
| Payment Due Date: | 07/05/12 |

If payment is received after 07/15/2012 please pay $582.70, which includes a $27.75 late fee.

In order to receive your payment by the due date, we suggest mailing at least five (5) business days prior to that date. Please refer to important disclosures, account and payment information found elsewhere on this statement.

Additional Principal: 

Payment Enclosed: $554.95

Make Check Payable to:

Bank of America, N.A.
P. O. Box 15025
Wilmington, DE 19886-5025





310000000055495    6827107191177999    547040808

⑆547040808⑆6827107191779⑈

# Bank of America 〉〉 Home Loans

BANK OF AMERICA, N.A.
P.O. BOX 26078
GREENSBORO, NC 27420

| Account Number: 6827 1071 917799 |
|---|
| Page 1 of 2 |

## Variable Rate Snapshot

Statement Period: 05/12/2011-06/10/2011

| | |
|---|---|
| Previous Outstanding Variable Balance: | $247,671.61 |
| New Outstanding Variable Balance: | $247,659.07 |
| Credit Limit: | $245,000.00 |
| Total Principal Balance: | $247,096.59 |
| Available Credit: | $0.00 |
| Current Payment Due: | $556.48 |
| Past Due Amount: | $0.00 |
| Total Minimum Payment Due: | $556.48 |
| Payment Due Date: | 07/05/2011 |

Payment shown above does not include Fixed Rate Loan Options. Any Fixed Rate Loan Options you have will be billed separately.

+ 0334752 008050395 094SH2-P7
REINA M MERCADO
301 CLEVELAND AVE
LONG BRANCH NJ 07740-6114

---

## Bank of America Equity Maximizer

### Account Summary

| Account Type | Principal Balance | Account Number |
|---|---|---|
| Variable Rate | $247,096.59 | 6827 1071 917799 |

Fixed Rate Loan Options are available. Please call customer service for current rates. Information about your transactions are included on the next page of this statement.

### Variable Rate Portion Summary

| | |
|---|---|
| ANNUAL PERCENTAGE RATE | 2.74% |
| Daily Periodic Rate | .0075068% |
| Corresponding Annual Percentage Rate | 2.74% |
| Days in Billing Cycle | 30 |
| Periodic FINANCE CHARGE | $556.48 |
| Other FINANCE CHARGE | $0.00 |
| Outstanding Fees (due upon payoff) | $0.00 |

### Messages

Your outstanding principal balance exceeds your credit line. We will be unable to advance additional funds on your line of credit until your outstanding principal balance is reduced.

### Customer Service Information

 www.bankofamerica.com


1.800.934.LOAN (5626) Home Equity
Customer Service
TDD 1.866.345.1260
Se habla Español: 1.800.838.6088
Customer Service Hours:
Monday through Friday
8:00 a.m. - 9:00 p.m. Eastern


Bank of America, N.A.
P.O. Box 21848
Greensboro, NC 27420-1948

---

## Payment Coupon - Please return with your payment

REINA M MERCADO
301 CLEVELAND AVE
LONG BRANCH NJ 07740-6114

| Minimum Payment Due | $556.48 |
|---|---|

| | |
|---|---|
| Equity Maximizer Number: | 6827 1071 917799 |
| Current Payment Due: | $556.48 |
| Past Due Amount: | $0.00 |
| Total Minimum Payment Due: | $556.48 |
| Payment Due Date: | 07/05/11 |

If payment is received after 07/15/2011 please pay $584.30, which includes a $27.82 late fee.

In order to receive your payment by the due date, we suggest mailing at least five (5) business days prior to that date. Please refer to important disclosures, account and payment information found elsewhere on this statement.

Additional Principal:

Payment Enclosed: 556.48

Make Check Payable to:

Bank of America, N.A.
P. O. Box 15025
Wilmington, DE 19886-5025

7100000000556648   6827107191177999   547040808

ꞏꞏ547040808ꞏꞏ6827107191779ꞏꞏ

BANK OF AMERICA, N.A.
P.O. BOX 26078
GREENSBORO, NC 27420

| Account Number: 6827 1071 917799 | |
|---|---|
| Page 1 of 2 | |
| **Variable Rate Snapshot** | |
| Statement Period: 02/09/2010-03/11/2010 | |
| Previous Outstanding Variable Balance: | $247,616.49 |
| New Outstanding Variable Balance: | $247,672.13 |
| Credit Limit: | $245,000.00 |
| Total Principal Balance: | $247,097.11 |
| Available Credit: | $0.00 |
| Current Payment Due: | $575.02 |
| Past Due Amount: | $0.00 |
| Total Minimum Payment Due: | $575.02 |
| Payment Due Date: | 04/05/2010 |

Payment shown above does not include Fixed Rate Loan Options. Any Fixed Rate Loan Options you have will be billed separately.

+ 0279568 000058464 894952-P7
REINA M MERCADO
1760 E 51ST ST
BROOKLYN NY 11234-3817

## Bank of America Equity Maximizer

### Account Summary
| Account Type | Principal Balance | Account Number |
|---|---|---|
| Variable Rate: | $247,097.11 | 6827 1071 917799 |

Fixed Rate Loan Options are available. Please call customer service for current rates. Information about your transactions are included on the next page of this statement.

### Variable Rate Portion Summary
| ANNUAL PERCENTAGE RATE | 2.74% |
|---|---|
| Daily Periodic Rate | .0075068% |
| Corresponding Annual Percentage Rate | 2.74% |
| Days in Billing Cycle | 31 |
| Periodic FINANCE CHARGE | $575.02 |
| Other FINANCE CHARGE | $0.00 |
| Outstanding Fees (due upon payoff) | $0.00 |
| Deferred Extension Interest | $0.00 |

### Messages
Your outstanding principal balance exceeds your credit line. We will be unable to advance additional funds on your line of credit until your outstanding principal balance is reduced.

### Customer Service Information
 www.bankofamerica.com

 1.800.934.LOAN (5626) Home Equity Customer Service
TDD 1.866.945.1284
Se habla Espanol: 1.800.688.6086
Customer Service Hours:
Monday through Friday
8:00 a.m. - 9:00 p.m. Eastern

 Bank of America, N.A.
P.O. Box 21848
Greensboro, NC 27420-1848



# Bank of America

Bank of America, N.A.
P.O. Box 26078
Greensboro, NC 27420

**Equity Maximizer Number:**
6827 1071 917799

Page 1 of 2
Statement Period 02/08/2008 - 03/07/2008

Fixed Rate Loan Options are available. Please call
customer service for current rates.

| Customer Service Information |
|---|
|  For payoff or additional information, please call: |
| 1.800.934.LOAN (5626)  Home Equity  Customer Service |
| 1.866.345.1290    TDD/TTY Users only |
| Or you may write to:  Bank of America, N.A. P. O. Box 21848 Greensboro, NC 27420-1848 |

104797 1 AT 0.334
REINA M MERCADO
1750 E 51ST ST
BROOKLYN, NY 11234-3804

## Bank of America Equity Maximizer

### Equity Maximizer Account Summary

| | Principal Balance | Account Number |
|---|---|---|
| Variable Rate: | $0.00 | 6827 1071 917799 |
| Fixed Rate Loan Option 02: REINA M | $247,311.36 | 6827 1071 917702 |
| Total Credit Line:$245,000.00 | Principal Balance:$247,311.36 | Available Credit:$0.00 |

### Variable Rate Portion Summary

| | | | |
|---|---|---|---|
| Payment Due Date: | 04/01/2008 | **ANNUAL PERCENTAGE RATE** | **5.49%** |
| Current Payment Due: | $0.00 | Daily Periodic Rate | .0150000% |
| Past Due Amount: | $0.00 | Corresponding Annual Percentage Rate | 5.49% |
| **TOTAL MINIMUM PAYMENT DUE:** | **$0.00** | Days in Billing Cycle | 31 |
| | | Periodic FINANCE CHARGE | **$0.00** |
| **Outstanding Fees:** | **$0.00** | Other FINANCE CHARGES | **$0.00** |

Payment shown above does not include Fixed Rate Loan Options. However, the status of your Fixed Rate Loan Option is shown on
this statement. Any Fixed Rate Loan Options you have will be billed separately.

Your outstanding principal balance exceeds your credit line. We will be unable to advance additional funds on your
line of credit until your outstanding principal balance is reduced.

In order to receive your payment by the due date, we suggest mailing at least five (5) business days prior to that date.
Please refer to important disclosures, account and payment information found elsewhere on this statement.

### Payment Coupon - Please return with your payment

REINA M MERCADO

Additional Principal: $

| | | |
|---|---|---|
| **Equity Maximizer Number:** | 6827 1071 917799 | Payment Enclosed: $ |
| Current Payment Due: | $0.00 | Make Check Payable to: |
| Past Due Amount: | $0.00 | |
| **Total Minimum Payment Due:** | **$0.00** | BANK OF AMERICA, N.A. |
| **Payment Due Date:** | 04/01/2008 | P.O. BOX 535310 Atlanta GA 30353-5310 |

710000000000000    6827107191  77999    547040808

547040808:  68 2710 7191 7799

# Bank of America

*Bank of America, N.A.*
*P.O. Box 26078*
*Greensboro, NC 27420*

**Equity Maximizer Number:**
**6827 1071 917799**

Page 1 of 2
Statement Period: 12/13/2006 – 01/07/2007

Fixed Rate Loan Options are available. Please call customer service for current rates.

## Customer Service Information



For payoff or additional information, please call:

**1.800.934.LOAN (5626)** Home Equity Customer Service

**1.888.346.1260** TDD/TTY Users only

Or you may write to:



Bank of America, N.A.
P. O. Box 21848
Greensboro, NC 27420-1848

70341 1 AT 0.308        7203 00005148 270 70341    2
REINA M MERCADO
1750 E 51ST ST
BROOKLYN, NY 11234~3804

## Bank of America Equity Maximizer

### Equity Maximizer Account Summary

| | **Principal Balance** | **Account Number** |
|---|---|---|
| Variable Rate: | $244,000.00 | 6827 1071 917799 |
| Total Credit Line:$245,000.00 | Principal Balance:$244,000.00 | Available Credit:$1,000.00 |

### Variable Rate Portion Summary

| | | | |
|---|---|---|---|
| Payment Due Date: | 02/01/2007 | ANNUAL PERCENTAGE RATE | 7.74%* |
| Current Payment Due: | $952.55 | Daily Periodic Rate | .0212054% |
| Past Due Amount: | $0.00 | Corresponding Annual Percentage Rate | 7.74% |
| **TOTAL MINIMUM PAYMENT DUE:** | **$952.55** | Days in Billing Cycle | 26 |
| | | Periodic FINANCE CHARGE | $952.55 |
| Outstanding Fees: | $0.00 | Other FINANCE CHARGES | $0.00 |

Payment shown above does not include Fixed Rate Loan Options. However, the status of your Fixed Rate Loan Option is shown on this statement. Any Fixed Rate Loan Options you have will be billed separately.

During 2006, the combined interest paid on this Line of Credit including the variable rate portion and any related fixed rate options was $0.00.

In order to receive your payment by the due date, we suggest mailing at least five (5) business days prior to that date.
Please refer to important disclosures, account and payment information found elsewhere on this statement.

### Payment Coupon - Please return with your payment

REINA M MERCADO

| | | Additional Principal: | $ |
|---|---|---|---|

| | | Payment Enclosed: | $ |
|---|---|---|---|
| Equity Maximizer Number: | 6827 1071 917799 | | |
| Current Payment Due: | $952.55 | Make Check Payable to: | |
| Past Due Amount: | $0.00 | | |
| Total Minimum Payment Due: | $952.55 | BANK OF AMERICA, N.A. | |
| Payment Due Date: | 02/01/2007 | P.O. Box 535310 | |

our payment will draft automatically.
payment is received after 02/11/2007 please pay
1,000.18, which includes a $47.63 late fee.

Atlanta GA 30353-5310

310000000095255   6827107191 77999   547040808

‖: 54 7040808‖:88 27 1071917799‖‖



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------X

TANYA KHURSANOVA,
    Plaintiff,
       - against -

REINA M. MERCADO, and JOSE F. ARAUJO
    Defendants.
------------------------------------------------------------X

Index No.    12-726/11
              Filed 6/3/11

**COMPLAINT**

The Plaintiff, through her attorney, JON LEFKOWITZ, ESQ., 1222 Avenue M, Suite 204,

Brooklyn, New York, 11230, alleges as follows:

1.  Plaintiff and Defendant Reina entered into an oral partnership agreement to become joint
    owners and thereafter landlords of a property, specifically 1750 East 51st, Brooklyn, New
    York 11234 (hereinafter "Property").

2.  In 2005 Plaintiff and Defendant Reina purchased said Property jointly.  See attached
    Deed as Exhibit "A."

3.  The Property contains three apartments, with monthly rents as follows: Apartment 1:
    $2,200.00; Apartment 2F: $1,450.00; Apartment 2B: $1,350.00; total monthly rental
    income of $5,000.00.

4.  The terms of the Agreement were such that Plaintiff and Defendant Reina would own the
    property jointly and collect rent, which was to be divided equally, less expenses, between
    Plaintiff and Defendant.

5.  It was mutually agreed that Defendant Reina should conduct and manage the Property,
    keep full and accurate accounts of the same, and render to Plaintiff the proceeds from the
    rent as well as a full account and statement of said Property. Commencing January, 2010
    until the present date, Defendant Reina has failed to divide with plaintiff the rent
    collected from the three apartments, specifically she has completely stopped making any
    and all payments to Plaintiff, and kept all the rent herself.

6. The mortgage is not being paid as defendants are collecting all the income and plaintiff is unable to pay any mortgage payment or even to negotiate with the lender.

7. Defendant Reina also impaired the value of the property by encumbering it with a home equity line of credit in the amount of $250,000.00. Defendant Reina is only paying her equity line of credit and the mortgage is not being paid.

8. Defendant Reina, though often requested so to do, has failed, neglected and refused to render to Plaintiff an account and statement of the transactions of said Property and of the profits thereof.

9. There is due to the Plaintiff, as she is informed and believes, as her share of the proceeds from rent, the amount of about $90,000.00, which will be shown by a full and true accounting to be her just share of the assets of said Partnership.

10. In addition, defendants reside in the basement of the premises, and have never paid rent. Defendant Reina agreed that she would pay plaintiff rent in the amount of $1,200.00 monthly in the approximate amount of $18,000.00 through May, 2011.



### 2nd Cause of Action against defendant Araujo -conversion

11. Defendant Araujo resides in the basement of the premises, and has collected rent from the other tenants since January, 2010, without authorization of plaintiff, and has kept the rent and converted it to his own use, and not returned it to plaintiff, despite due demand for same.

### 3rd Cause of Action against defendant Araujo --use and occupancy

12. Defendant Araujo resides in the basement of the premises, and has collected rent from the other tenants since JANUARY 2010, without authorization of plaintiff, but has never paid for his use and occupancy of plaintiff's property, despite due demand for same.

**WHEREFORE**, the Plaintiff demands judgment against Defendants as follows:

- That defendant Reina be adjudged and compelled to account to Plaintiff as to all the dealings of said partnership, the amounts received for rent of the apartments, pursuant to NY CLS Partnership Law § 44.

- That Defendants be adjudged to pay over to Plaintiff as her share of said rent, the said sum of $90,000.00, or such sum or property as may be found due or justly belonging to Plaintiff in the premises.

- That Defendants be enjoined from collecting any rent from the premises and from having anything to do with the premises, and that plaintiff have sole custody and control of the premises, and the profits thereof.

- That the partnership be dissolved.

- That the defendants pay plaintiff's costs and attorney fees.

- For such other or further relief as the court may deem just and proper.

- On the 2nd cause of action, that defendant Araujo & Mercado be adjudged to pay to plaintiff the sum of $90,000.00.

- On the 3rd cause of action, that defendant Araujo be adjudged to pay to plaintiff an amount to be determined at trial ,but at least $18,000.00.

May 23, 2011

Jon A. Lefkowitz
Attorney for plaintiff
1222 Ave. M
Brooklyn, NY 11230
(718)692-0459

J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------------X          Index No.: 12726/11
TANYA KHURSANOVA,

               Plaintiff,                                    **ANSWER**

    -- against --

REINA MERCADO and JOSE ARAUJO,

               Defendants.
------------------------------------------------------------------X

       The defendants, through undersigned counsel, as and for an answer to the
plaintiff's complaint, allege as follows:

       1. Defendants deny all of the allegations contained in paragraphs of plaintiff's
complaint designated as 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12.

<u>**AS AND FOR A FIRST COUNTERCLAIM**</u>

       2. Defendant, Reina Mercado, is now, and at all times mentioned in this
Complaint was, a resident of the State of New York, County of Kings.

       3. Defendant, Tanya Khursanova, is now, and at all times mentioned in this
Complaint, was a resident of the State of New York, County of Kings.

       4. Plaintiff and Defendant Reina Mercado are owners in fee simple as tenants in
common each with a one half share of the real property known as and by the street address of and
located at 1750 East 51st Street, Brooklyn, New York, County of Kings, State of New York,
designated in the Office of the City Register of the City of New York as Block 7895, Lot 72, and
more particularly described in "Schedule A" of the deed thereto, a copy of which is attached as
<u>Exhibit A</u> and incorporated into this complaint by this reference.

5. Defendant Reina Mercado acquired her share of the property from the defendant by a deed dated December 14, 2006, recorded in the office of the City Register of the City of New York on February 16, 2007, with CRFN No. 2007000093799. Said deed has been attached to this complaint as Exhibit A.

6. No other party, or the share, right or interest of a party, is known to Defendant Reina Mercado.

7. No share, right or interest is contingent.

8. There is no ownership by inheritance that is dependent on an executory devise.

9. There is no contingent share, right or interest.

10. The parties do not own any other lands in common.

## AS AND FOR A SECOND COUNTERCLAIM

11. Defendants realleges paragraphs 1 through 10 with the same force and effect as if fully set forth at length.

12. Prior to December 14, 2006, plaintiff offered to sell Defendant Reina Mercado a one half interest in the property subject of this action.

13. Plaintiff represented to Defendant Reina Mercado that the property was valued at $700,000, and that Defendant Reina Mercado was willing to sell to Defendant Reina Mercado a one half interest in the subject property for the sum of $250,000.

14. Defendant Reina Mercado relied on plaintiff's representations as to the value of the property, and with the plaintiff's assistance and encouragement, Defendant Reina Mercado obtained a personal loan in the sum of $250,000, and paid the plaintiff the said sum in payment for a one half interest in the subject property.

15. The plaintiff, having gained Defendant Reina Mercado's confidence, advised Defendant Reina Mercado that the transaction could be handled amongst the parties themselves, without the need to incur the expense of lawyers or any other expenses.

16. As a result of the defendant's active guidance of how the transaction should be conducted, the transaction was effected without conducting a title search and without obtaining title insurance.

17. Plaintiff deliberately failed to disclose to Defendant Reina Mercado that plaintiff had obtained a mortgage on the subject property in the sum of $499,000, which is a lien on the subject property.

18. The failure to disclose the existence of a mortgage on the subject property is a fraudulent misrepresentation of the value of the share of the property that the plaintiff was selling to the Defendant Reina Mercado.

19. The plaintiff knew at the time of the representation of the value of the property to Defendant Reina Mercado that the said property was subject to the mortgage and that, therefore, the representation of the value of the property, without a mortgage, was a fraudulent misrepresentation to the Defendant Reina Mercado of the true value of the property.

20. Defendant Reina Mercado relied on the plaintiff's representation of the value of the property in deciding to purchase a share of the subject property.

## AS AND FOR A THIRD COUNTERCLAIM

21. Defendants reallege paragraphs 1 through 20 with the same force and effect as if fully set forth at length.

22. The defendant has deliberately failed to pay the monthly payment due on the mortgage obtained by defendant and which mortgage is a lien on the subject property.

23. The plaintiff has failed to disclose to defendants the name of the bank with which plaintiff has the mortgage on the subject premises and refused at all times to disclose the current status of the mortgage or of any mortgage negotiations with the lender.

24. Due to the defendant's actions, the lender that holds defendant's mortgage is about to commence foreclosure proceedings against the defendant.

25. The defendant's acts constitute waste of the subject property.

## AS AND FOR A FOURTH COUNTERCLAIM

26. Defendants reallege paragraphs 1 through 25 with the same force and effect as if fully set forth at length.

27. There are three tenants at the subject property.

28. Defendant Reina Mercado is the person that leased to those tenants the spaces occupied by those tenants.

29. Since the plaintiff has failed to pay the mortgage on the subject premises, Defendant Reina Mercado has collected the rents from the tenants and is depositing the said sums in a separate account to pay to lender at the time when plaintiff reveals the name of the lender, and actively participates with Defendant Reina Mercado to reinstate the mortgage.

30. The defendant has commenced a campaign of harassment against the tenants threatening the tenants with legal action, with denouncing tenants with the police, and even with calling the immigration authorities to investigate the tenants' immigration status.

31. Plaintiff, prior to June 30, 2011, was not in possession of any part of the subject real property. On or about June 30, 2011, without authorization from defendants, by violent means, the plaintiff, broke the lock of the subject premises, broke into the subject premises, and forcibly entered into the subject premises. Plaintiff forcibly entered upon the

subject premises, and has by force taken over and obtained possession of one apartment on the second floor of the subject premises.

32  Plaintiff has communicated to Defendant Reina Mercado that plaintiff will continue such conduct, and even take steps against Defendant Reina Mercado in whatever manner plaintiff can until Defendant Reina Mercado relents and turns over to plaintiff all of the sums of money collected from the tenants.

33  The plaintiff's acts are intended to compel the tenants to leave the subject premises, and to deliberately sabotage any attempts by Defendant Reina Mercado to safeguard the subject property from a foreclosure action by the lender who holds defendant's mortgage.

34  It is necessary that this court intervene and permanently enjoin the plaintiff from continuing plaintiff's course of conduct harassing the tenants at the subject property and harassing the defendants.

35  Defendant Reina Mercado has no adequate remedy at law.

36.  By reason of the foregoing, it is respectfully requested that the plaintiff's conduct be preliminarily and permanently enjoined.

## AS AND FOR A FIFTH COUNTERCLAIM

37.  The defendants reallege paragraphs 1 through 36 with the same force and effect as if fully set forth at length.

38.  The plaintiff owns and operates a restaurant located at 1015 Avenue of the Americas, in the City of New York, Borough of New York, doing business as Divine Bites.

39.  Between November 29, 2009, and May 28, 2010, defendant Jose Araujo, at the instance and request of the plaintiff, and for her use and benefit, furnished materials, work,

labor and services for the construction of the restaurant business located at 1015 Avenue of the Americas, New York, New York..

40.    The agreed upon reasonable value of the materials, work, labor, services furnished to the defendants by plaintiff is $71,000.

41.    Demand was made to the plaintiff for payment, but plaintiff has refused to pay.

42.    There is presently due to the defendant Jose Araujo from plaintiff for materials, work, labor and services the sum of $71,000, with interest from May 28, 2010.

## AS AND FOR A SIXTH COUNTERCLAIM

43.    Defendants reallege paragraphs 1 through 42 with the same force and effect as if fully set forth at length.

44.    Between July 2009 and October 2009, for purposes of construction of the restaurant business operated by plaintiff at 1015 Avenue of the Americas, in New York County, doing business as Divine Bites, the plaintiff borrowed various amounts from defendant Reina Mercado totaling the sum of $30,000, with the promise that said sum would be repaid within sixth months.

45.    Six months after October 2009, defendant Reina Mercado demanded payment from plaintiff.

46.    Plaintiff submitted several checks in small amounts to defendant Reina Mercado.  Said checks, however, were returned unpaid by plaintiff' banking institution for insufficient funds.

47.    Defendant Reina Mercado has demanded that plaintiff pay the amount owed.

48.    The plaintiff have refused to pay.

labor and services for the construction of the restaurant business located at 1015 Avenue of the Americas, New York, New York..

40. The agreed upon reasonable value of the materials, work, labor, services furnished to the defendants by plaintiff is $71,000.

41. Demand was made to the plaintiff for payment, but plaintiff has refused to pay.

42. There is presently due to the defendant Jose Araujo from plaintiff for materials, work, labor and services the sum of $71,000, with interest from May 28, 2010.

## AS AND FOR A SIXTH COUNTERCLAIM

43. Defendants reallege paragraphs 1 through 42 with the same force and effect as if fully set forth at length.

44. Between July 2009 and October 2009, for purposes of construction of the restaurant business operated by plaintiff at 1015 Avenue of the Americas, in New York County, doing business as Divine Bites, the plaintiff borrowed various amounts from defendant Reina Mercado totaling the sum of $30,000, with the promise that said sum would be repaid within sixth months.

45. Six months after October 2009, defendant Reina Mercado demanded payment from plaintiff.

46. Plaintiff submitted several checks in small amounts to defendant Reina Mercado. Said checks, however, were returned unpaid by plaintiff' banking institution for insufficient funds.

47. Defendant Reina Mercado has demanded that plaintiff pay the amount owed.

48. The plaintiff have refused to pay.

49. Plaintiff, therefore, is indebted to defendant Reina Mercado in the sum of $30,000, plus interest from October 2009.

## AS AND FOR A SEVENTH COUNTERCLAIM

50. Defendants reallege paragraphs 1 through 49 with the same force and effect as if fully set forth at length.

51. During on or about November 2009 the plaintiff opened a credit card payments processing account using the name of defendant Reina Mercado without her authorization.

52. Defendant Reina Mercado did not learn that such an account had been opened in her name by plaintiff until the payments processing company wrote to defendant Reina Mercado seeking to confirm her authorization as part of that company's security measures.

53. The representations made by plaintiff to the credit card payments processing company were false.

54. The plaintiff knew that the misrepresentations were false.

55. Defendant Reina Mercado's name, premised on those false representations, was fraudulently used by the plaintiff to induce the credit card processing company to open an account in plaintiff Reina Mercado's name.

56. As a result of the plaintiff's fraudulent use of defendant Reina Mercado's name in processing credit card payments, defendant Reina Mercado's credit rating was reduced, her available credit was reduced, and the interest payable by her on her credit card accounts was increased.

57. As a result of plaintiff's fraudulent use of defendant Reina Mercado's name in defendants' processing of credit card payments defendant Reina Mercado has been damaged in the sum of $50,000.00.

## AS AND FOR AN EIGHTH COUNTERCLAIM

58. Defendants reallege paragraphs 1 through 57 with the same force and effect as if fully set forth at length.

59. As a result of the plaintiff's refusal to pay the defendants the sums owed to defendants by the plaintiff the defendant has been required to retain the services of an attorney.

60. Pursuant to the terms of the retainer agreement between the defendants and defendants' attorney, defendants agree to pay plaintiff's attorney one third of the net sum recovered.

61. Considering the foregoing, the plaintiff is indebted to the defendants for the attorney's fees payable to plaintiff's attorney which at the very least will amount to $50,333.00.

WHEREFORE, defendants demand that the plaintiff's complaint be dismissed in its entirety, and that this court enter judgment in favor of the defendants and against the plaintiff:

1. ordering the partition and the division of the real property described in the complaint, according to the respective rights of the parties interested therein, and, if a partition cannot be made without great prejudice to the owners of the property, that the property be sold and the proceeds divided among the parties according to their respective rights after the payment of the lawful costs and expenses.

2. That upon sale, from the proceeds of the sale of the property, the plaintiff be reimbursed in full the amount plaintiff paid to the defendant.

3. Alternatively, that the deed through which defendant sold a share of the property to plaintiff be set aside, and that the plaintiff be reimbursed in full the price she paid to the defendant.

4. That the defendant be preliminarily and permanently enjoined from harassing the plaintiff and the tenants at the subject property.

5. In the sum of $71,000.00 with regard to the First Counterclaim, plus interest from May 28, 2010.

6. In the sum of sum of $30,000, in the Sixth Counterclaim, plus interest from October 2009.

7. In the sum of $50,000.00 with regard to the Seventh Counterclaim.

8. In the sum of at least $50,333.00 in the Eight Counterclaim.

9. That this court award the costs and disbursements of this action.

10. That this court grant any such other and further relief as to this court might seem just and proper.

Dated: 07/16/11

WILLIAM H. SALGADO
Attorney for Defendants
37-03 81st Street 2nd Floor
Jackson Heights, NY 11372
(718) 458 0047

## VERIFICATION

STATE OF NEW YORK, COUNTY OF QUEENS, ss.:

I am one of the defendant in the within action. I have read the foregoing Answer and know the contents thereof. The contents of the Answer are true to my knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

JOSE F. ARAUJO

Subscribed and sworn to before me
on 07/16/11

WILLIAM H. SALGADO
Notary Public, State of New York
No. 41-4914691
Qualified in Queens County
Commission Expires Nov. 23, 2013

## VERIFICATION

STATE OF NEW YORK, COUNTY OF QUEENS, ss.:

     I am one of the defendant in the within action. I have read the foregoing Answer and know the contents thereof. The contents of the Answer are true to my knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_Reina M Mercado_
REINA M. MERCADO

Subscribed and sworn to before me
on   07

WILLIAM H. SALGADO
Notary Public, State of New York
No. 41-4914691
Qualified in Queens County
Commission Expires Nov. 28, 2013

K

**Bank of America**

**Home Loans**
P.O. Box 5170
SIMI VALLEY, CA 93062-5170

*Send Payments to:*
P.O. Box 15222
Wilmington, DE 19886-5222

April 4, 2013

Tanya Khursanova
1750 E 51st St
Brooklyn, NY 11234-3817

Account No: 22120798
Premises:
1750 E 51st St
Brooklyn, NY 11234

## NOTICE OF INTENT TO ACCELERATE

Dear Tanya Khursanova:

Bank of America, N.A. (hereinafter "Bank of America, N.A.") services the home loan described above on behalf of the holder of the promissory note (the "Noteholder"). The loan is in serious default because the required payments have not been made. The total amount now required to reinstate the loan as of the date of this letter is as follows:

| | | |
|---|---|---|
| **Monthly Charges:** | 02/01/2009 | $102,494.34 |
| | 04/01/2011 | $99,423.00 |
| **Late Charges:** | | |
| **Other Charges:** | Uncollected Late Charges: | $63.90 |
| | Uncollected Costs: | $1,745.00 |
| | Partial Payment Balance: | ($0.00) |
| | **TOTAL DUE:** | **$203,726.24** |

You have the right to cure the default. To cure the default, on or before May 14, 2013, Bank of America, N.A. must receive the amount of $203,726.24 plus any additional regular monthly payment or payments, late charges, fees and charges, which become due on or before May 14, 2013.

The default will **not** be considered cured unless Bank of America, N.A. receives "good funds" in the amount of $203,726.24 on or before May 14, 2013. If any check (or other payment) is returned to us for insufficient funds or for any other reason, "good funds" will not have been received and the default will not have been cured. No extension of time to cure will be granted due to a returned payment. Bank of America, N.A. reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. For example, if less than the full amount that is due is sent to us, we can keep the payment and apply it to the debt but still proceed to foreclosure since the default would not have been cured.

If the default is not cured on or before May 14, 2013, the mortgage payments will **be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property. If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, Bank of America, N.A. and the Noteholder shall be entitled to collect all fees and costs incurred by Bank of America, N.A. and the Noteholder in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. You have the right, in any lawsuit for foreclosure and sale to argue that you did keep your promises and agreements under the note and mortgage and to present any other defenses you may have.

Your loan is in default. Pursuant to your loan documents, Bank of America, N.A. may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (I) observe the physical condition of your property, (II) verify that the property is occupied and/or (III) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. **The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument.**

Finally, please be advised that you have the right to have Bank of America, N.A.'s enforcement of its Security Instrument discontinued and to have the Note and Security Instrument remain fully effective as if immediate payment in full had never been required if the

*This communication is from Bank of America, N.A., the servicer of your home loan.*

**Bank of America**



**Home Loans**

P. O. Box 840335
Simi Valley, CA 93094-0335

C3_4096_PREFCL14 15643 10/01/2012

ԲⅡₙₗᵗᵈᵈₗₗᵤₗₗₗₗᵗˡᵈˡₗₗₗₗᵈₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗ

AT1        0-772-74088-0000089-001-1-000-000-000-000

**MORTGAGOR(s):** TANYA KHURSANOVA
1750 E 51ST ST
BROOKLYN, NY 11234

**Notice Date:**    March 29, 2013

**Account No.:**    22120798

**Property Address:**
1750 E 51st St
Brooklyn, NY 11234

Dear TANYA KHURSANOVA:

You are receiving this notice because your mortgage is in default, and your property will be referred to foreclosure. Bank of America, N.A. is required to notify you of the following:

### 1. Standing:

Bank of America, N.A. services the mortgage loan on your property located at the address referenced above. You signed and executed a promissory note secured by a mortgage or deed of trust ("the security instrument") in which you agreed to repay your debt at agreed upon terms. Because you have not fulfilled the terms of this agreement, Bank of America, N.A. intends to initiate foreclosure action on the mortgaged property. The foreclosure will be conducted in the name of: HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR  THE HOLDERS OF THE DEUTSCHE ALT-A SECURITIES, INC, MORTGAGE LOAN TRUST, SERIES  2005-1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-1 ("Noteholder").

Noteholder, directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed.

### 2. Account Status as of March 28, 2013:

**A.** The total amount needed to reinstate or to bring the account current is $199,749.32. Please note this amount is subject to change. Please call us for the most current amount.

**B.** The amount of the principal obligation under the mortgage is $473,683.93.

**C.** The date through which the account is paid is January 1, 2009.

**D.** The date of the last full payment was September 21, 2009.

**E.** The current interest rate in effect for the loan is 6.625.

**F.** The date on which the interest rate may next reset or adjust is Not Applicable.

**G.** The amount of any prepayment fee (not included in the reinstatement amount) to be charged if any is Not Applicable.

**H.** The amount of late payment fees included in the above reinstatement amount is $63.90.

This communication is from Bank of America, N.A., the servicer of your home loan.

## IMPORTANT DISCLOSURES

**BK Statement:**

If you are currently in a bankruptcy proceeding, or have previously obtained a discharge of this debt under applicable bankruptcy law, this notice is for information only and is not an attempt to collect the debt, a demand for payment, or an attempt to impose personal liability for that debt. You are not obligated to discuss your home loan with us or to enter into a loan modification or other loan-assistance program. You should consult with your bankruptcy attorney or other advisor about your legal rights and options.

**SCRA Disclosure:**

**MILITARY PERSONNEL/SERVICEMEMBERS:** If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at 1.877.430.5434. If you are calling from outside the U.S. please contact us at 1.817.685.6491.

**Mini Miranda (all):**

Bank of America, N.A., the servicer of your home loan, is required by law to inform you that this communication is from a debt collector.

# L

TANYA KHURSANOVA
2063 BRAGG STREET
BROOKLYN, NY 11229
718 809-5999


TO ALL TENANTS/OCCUPANTS OF
1750 EAST 51 STREET
BROOKLYN, NY 11234

## DEAR TENANTS/OCCUPANTS:

As the owner of the building you reside in 1750 East 51 Street in Brooklyn, NY 11294. Effective immediately you are hereby notified that you must acknowledge the ownership of the building therefore, any future rents must be acknowledgeable as such.

You are hereby advised any future rents must be made payable to the ownership of the building and no other party.

Furthermore, you must provide copies of your leases along with copies of rent payments that were made from the start of the lease term. **At this moment no back rent is being requested of you.** If such is not provided within 10 days considers your selves in default and **I will reserve the right to demand back rent from the start of the lease term.** I will have the right to move forward with an eviction for none payment of rent.

**NOTE:** IF YOU PAY YOUR RENT TO A NONE OWNER OR ANY OTHER PARTY, YOU WILL NOT BE CREDITED AND HELD RESPONSIBLE THEREOF.

Should you have any question, please contact at the number above.

Yours Truly,

Tanya Khursanova


Cc: Elias Kraus Esq.

February 7th, 2011.
Certified Mail 7010-0290-000-3959-2061



## NOTICE TO TENANT

Maribel Rojas
1750 East 51st St., Apt. 2F (top flr front)
Brooklyn, NY 11234

TAKE NOTICE that you, hereby required to pay to the landlord of the above described premises as set forth above, now occupied by you as a tenant(s), on or before the expiration of Five days of the service of this Notice upon you

| | |
|---|---|
| the sum of | $18,400.00 |
| and for rent from | 12-1-09 |
| through | 3-31-11 |
| at a monthly rate of | $1,150.00 |

for the above described premises, or surrender up the possession of said premises to the landlord, in default of which the landlord will commence summary proceeding under the Statue to recover the possession to the landlord.

Dated: 3-2-11
Brooklyn, N.Y.

Tanya Khursanova
Landlord

Attorney for Landlord:
Eliezer B. Kraus, Esq.
2405 Ave. U
Brooklyn, NY 11229

Under the provisions of the Fair Debt Collection Practice Act (FDCPA) the Law Offices of Eliezer B. Kraus may be considered Debt Collectors in the attempt to collect rent. Therefore, any information obtained by us from you or about you may be used for that purpose.

If you dispute the validity of all or any portion of this debt, you may notify this office, and if possible, please make the notification in writing within thirty days of receipt of this notice or we may assume that the rent demanded herein is due.

If you notify this office within thirty days of receipt of this notice and request information concerning the debt and/or indicate that you dispute the sum stated to be due, we will obtain and send you verification or the debt. Additionally, upon you written request, we will also supply you with the name of the original creditor if different from that listed.

Please take notice that under New York State Law, your landlord is permitted following the expiration of five days of the service of this Notice upon you, to commence summary proceedings under Article 7 of the Real Property Actions and Proceedings Law. Thus, notwithstanding our indication that you have thirty days to dispute the validity of the debt, if the money demands herein is not paid by the above date, summary proceeding will be commenced. If, however, this office receives a request for verification at any time during the thirty day period, this office will mail you verification of the debt.

FEDERAL LAW REQUIRES US TO ADVISE YOU THAT THIS OFFICE SPECIALIZES IN THE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

## NOTICE TO TENANT

Moises Martinez Gonzales
1750 East 51st St., Apt. 2R (top flr rear)
Brooklyn, NY 11234

TAKE NOTICE that you hereby required to pay to the landlord of the above described premises as set forth above, now occupied by you as a tenant(s), on or before the expiration of Five days of the service of this Notice upon you

| | |
|---|---|
| the sum of | $17,500.00 |
| and for rent from | 2-1-10 |
| through | 3-31-11 |
| at a monthly rate of | $1,250.00 |

for the above described premises, or surrender up the possession of said premises to the landlord, in default of which the landlord will commence summary proceeding under the Statue to recover the possession to the landlord.

Dated: 3-2-11
     Brooklyn, N.Y.

                              Tanya Khursanova
                              Landlord

Attorney for Landlord:
Eliezer B. Kraus, Esq.
2405 Ave. U
Brooklyn, NY 11229

Under the provisions of the Fair Debt Collection Practice Act (FDCPA) the Law Offices of Eliezer B. Kraus may be considered Debt Collectors in the attempt to collect rent. Therefore, any information obtained by us from you or about you may be used for that purpose.

If you dispute the validity of all or any portion of this debt, you may notify this office, and if possible, please make the notification in writing, within thirty days of receipt of this notice or we may assume that the rent demanded herein is due.

If you notify this office within thirty days of receipt of this notice and request information concerning the debt and/or indicate that you dispute the sum stated to be due, we will obtain and send you verification or the debt. Additionally, upon you written request, we will also supply you with the name of the original creditor if different from that listed.

Please take notice that under New York State Law, your landlord is permitted following the expiration of five days of the service of this Notice upon you, to commence summary proceedings under Article 7 of the Real Property Actions and Proceedings Law. Thus, notwithstanding our indication that you have thirty days to dispute the validity of the debt, if the money demands herein is not paid by the above date, summary proceeding will be commenced. If, however, this office receives a request for verification at any time during the thirty day period, this office will mail you verification of the debt.

FEDERAL LAW REQUIRES US TO ADVISE YOU THAT THIS OFFICE SPECIALIZES IN THE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

## NOTICE TO TENANT

Myrlande Blucicault
1750 East 51st St., Apt. 1 (1st flr)
Brooklyn, NY 11234

TAKE NOTICE that you hereby required to pay to the landlord of the above described premises as set forth above, now occupied by you as a tenant(s), on or before the expiration of Five days of the service of this Notice upon you

|  |  |
|---|---|
| | $25,200.00 |
| the sum of | |
| | 4-1-10 |
| and for rent from | 3-31-11 |
| through | $2,100.00 |
| at a monthly rate of | |

for the above described premises, or surrender up the possession of said premises to the landlord, in default of which the landlord will commence summary proceeding under the Statue to recover the possession to the landlord.

Dated: 3-2-11
    Brooklyn, N.Y.

                            Tanya Khursanova
                            Landlord

Attorney for Landlord:
Eliezer B. Kraus, Esq.
2405 Ave. U
Brooklyn, NY 11229

        Under the provisions of the Fair Debt Collection Practice Act (FDCPA) the Law Offices of Eliezer B. Kraus may be considered Debt Collectors in the attempt to collect rent. Therefore, any information obtained by us from you or about you may be used for that purpose.
        If you dispute the validity of all or any portion of this debt, you may notify this office, and if possible, please make the notification in writing; within thirty days of receipt of this notice or we may assume that the rent demanded herein is due.
        If you notify this office within thirty days of receipt of this notice and request information concerning the debt and/or indicate that you dispute the sum stated to be due, we will obtain and send you verification or the debt. Additionally, upon you written request, we will also supply you with the name of the original creditor if different from that listed.
        Please take notice that under New York State Law, your landlord is permitted following the expiration of five days of the service of this Notice upon you, to commence summary proceedings under Article 7 of the Real Property Actions and Proceedings Law. Thus, notwithstanding our indication that you have thirty days to dispute the validity of the debt, if the money demands herein is not paid by the above date, summary proceeding will be commenced. If, however, this office receives a request for verification at any time during the thirty day period, this office will mail you verification of the debt.
        FEDERAL LAW REQUIRES US TO ADVISE YOU THAT THIS OFFICE SPECIALIZES IN THE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE





**Buildings**
280 Broadway, New York, NY 10007

Robert D. LiMandri
Commissioner

MERCADO, REINA
1750 EAST    51 STREET
BROOKLYN NY 11234

MARCH 15, 2011

RE: COMPLAINT # 3369790-
RECEIVED ON:  FEBRUARY 28, 2011

AT: 1750 EAST    51 STREET
BROOKLYN , N.Y. 11234

DEAR MERCADO, REINA :

THIS DEPARTMENT HAS RECEIVED THE ABOVE COMPLAINT REGARDING
ALLEGED, ILLEGAL CONDITIONS AT THE REFERENCED PREMISES.
DEPARTMENT OF BUILDINGS RECORDS INDICATE THAT YOU ARE THE
OWNER OF RECORD FOR THIS PROPERTY.

OUR INSPECTOR HAS BEEN UNABLE TO GAIN ACCESS TO INSPECT THE
ALLEGED CONDITIONS. PLEASE CONTACT YOUR BOROUGH CONSTRUCTION
OFFICE AT 718-802-3685 TO SCHEDULE AN APPOINTMENT FOR AN
INSPECTION.

WE STRONGLY ENCOURAGE YOU TO MAKE YOUR APPOINTMENT OVER THE
PHONE.  HOWEVER, IF YOU ARE IN YOUR BOROUGH OFFICE ON OTHER
BUSINESS, YOU MAY MAKE THE APPOINTMENT IN PERSON. THIS MUST
BE DONE IN THE BOROUGH OFFICE IN WHICH THE ABOVE REFERENCED
PROPERTY IS LOCATED. PLEASE DO NOT COME INTO 280 BROADWAY
TO MAKE APPOINTMENTS FOR OTHER BOROUGHS.

FAILURE TO MAKE AN APPOINTMENT COULD RESULT IN THE DEPARTMENT
OF BUILDINGS OBTAINING AN ACCESS WARRANT TO INSPECT THE
PREMISES WITHOUT YOUR CONSENT.  PLEASE DISREGARD THIS LETTER
IF, IN THE PAST 10 DAYS, YOU HAVE MADE AN APPOINTMENT WITH
DOB TO INSPECT THIS PARTICULAR COMPLAINT.

SINCERELY,

DEPARTMENT OF BUILDINGS

safety            service            integrity



**Buildings**

280 Broadway,
New York, NY 10007
Robert D. LiMandri
Commissioner

MERCADO, REINA
1750 EAST   51 STREET
BROOKLYN NY 11234

JULY 23, 2012

RE: COMPLAINT # 3410263
RECEIVED ON:  APRIL 28, 2012

AT: 1750 EAST 51 STREET
BROOKLYN , N.Y. 11234

DEAR MERCADO, REINA :

THIS DEPARTMENT HAS RECEIVED THE ABOVE COMPLAINT REGARDING
ALLEGED, ILLEGAL CONDITIONS AT THE REFERENCED PREMISES.
DEPARTMENT OF BUILDINGS RECORDS INDICATE THAT YOU ARE THE
OWNER OF RECORD FOR THIS PROPERTY.

OUR INSPECTOR HAS BEEN UNABLE TO GAIN ACCESS TO INSPECT THE
ALLEGED CONDITIONS. PLEASE CONTACT YOUR BOROUGH CONSTRUCTION
OFFICE AT 718-802-3685 TO SCHEDULE AN APPOINTMENT FOR AN
INSPECTION.

WE STRONGLY ENCOURAGE YOU TO MAKE YOUR APPOINTMENT OVER THE
PHONE.  HOWEVER, IF YOU ARE IN YOUR BOROUGH OFFICE ON OTHER
BUSINESS, YOU MAY MAKE THE APPOINTMENT IN PERSON. THIS MUST
BE DONE IN THE BOROUGH OFFICE IN WHICH THE ABOVE REFERENCED
PROPERTY IS LOCATED.  PLEASE DO NOT COME INTO 280 BROADWAY
TO MAKE APPOINTMENTS FOR OTHER BOROUGHS.

FAILURE TO MAKE AN APPOINTMENT COULD RESULT IN THE DEPARTMENT
OF BUILDINGS OBTAINING AN ACCESS WARRANT TO INSPECT THE
PREMISES WITHOUT YOUR CONSENT.  PLEASE DISREGARD THIS LETTER
IF, IN THE PAST 10 DAYS, YOU HAVE MADE AN APPOINTMENT WITH
DOB TO INSPECT THIS PARTICULAR COMPLAINT.

SINCERELY,

DEPARTMENT OF BUILDINGS

build safe | live safe



**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

In the Matter of:

   Reina M Mercado,

     Debtor.

-----------------------------------------------------------x
      **Debtor**

Case No. 13-40725-jf

Chapter 7

**ORDER OF RELIEF**

   On consideration of the petition filed on **February 8, 2013** against the above-named debtor, an order for relief under Chapter 7 of the Bankruptcy Code (title 11 of the United States Code) is granted; and it is further

   **ORDERED,** that pursuant to Fed.R.Bankr.P. 1007(a)(2), the debtor is required to file within 7 days of the entry of this order a list of creditors; and it is further

   **ORDERED,** that pursuant to Fed.R.Bankr.P. 1007(a)(2) and 1007(b)(1), the debtor is required to file within 14 days of the entry of this order all schedules and statements, and an Official Form 21; and it is further

   **ORDERED,** that in the event the Debtor fails to file the aforesaid list of creditors, schedules and statements, the Petitioning Creditors are directed to file the same within 21 days of the date of this order, pursuant Fed.R.Bankr.P. 1007(k); and it is further

   **ORDERED,** that the Clerk of Court serve a copy of this Order forthwith by mail, upon the Debtor at its last known address, the U.S. Trustee and the Petitioning Creditors.



**Dated: Brooklyn, New York**
**March 11, 2013**

**Jerome Feller**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In Re:

REINA MERCADO,

                    Debtor.
-------------------------------------------------------------X

Case No. 1-13-40725-jf
Chapter 7

**CERTIFICATE OF SERVICE**

        WILLIAM H. SALGADO, an attorney at law duly admitted to practice in the Eastern

District, affirms the following:

        1. Affirmant is the attorney for the Alleged Debtor.

        2. On May 17, 2013, affirmant served the annexed Notice of Appearance, Notice of

Motion, Motion, with supporting affidavits and exhibits, on:

| Stuart I. Davis | John S. Pereira | US Trustee |
|---|---|---|
| Attorney for Petitoner | Trustee | 271 Cadman Plaza East |
| 1960 Williamsbridge Road | Pereira & Sinisi | Suite 4529 |
| Bronx, NY 10461 | 405 Lexington Avenue 7th Fl | Brooklyn, NY 11201 |
| | New York, NY 10174 | |

by depositing true copies thereof in postpaid wrappers, properly directed to the address designated
by said attorneys for service as set forth above, in a mail depository under the exclusive care and
control of the United States Postal Service within the City of New York via regular first class mail.

Dated: May 17, 2013

                                    S/

                                    **WILLIAM H. SALGADO**
                                    Attorney for Alleged Debtor (WS8153)
                                    37-06 82nd Street    Suite 310
                                    Jackson Heights, NY 11372
                                    (718) 458 0047

## Online Label Record (Label 1 of 1)

### USPS TRACKING™ Number:
### 9405 5036 9930 0432 1391 48

Paid Online

| | | |
|---|---|---|
| Transaction #: | 264459301 | Priority Mail® Postage: $5.25 |
| Print Date: | 05/17/2013 | Total: $5.25 |
| Ship Date: | 05/17/2013 | |

From:    WILLIAM SALGADO
         LAW OFFICE
         3706 82ND ST
         STE 310
         JACKSON HTS NY 11372-7017

To:      JOHN PEREIRA
         PEREIRA & SINISI
         405 LEXINGTON AVE
         FL 7
         NEW YORK NY 10174-0700

* Commercial Base Pricing Priority Mail rates apply. There is no fee for USPS Tracking™ service on Priority Mail service with use of this electronic rate shipping label. Delivery information is not available by phone for the electronic rate. Refunds for unused postage paid labels can be requested online 30 days from the print date.

## Online Label Record (Label 1 of 1)

### USPS TRACKING™ Number:
### 9405 5036 9930 0432 1430 60

Paid Online

| | | |
|---|---|---|
| Transaction #: | 264459392 | Priority Mail® Postage: $5.25 |
| Print Date: | 05/17/2013 | Total: $5.25 |
| Ship Date: | 05/17/2013 | |

From:    WILLIAM SALGADO
         LAW OFFICE
         3706 82ND ST
         STE 310
         JACKSON HTS NY 11372-7017

To:      STUART DAVIS
         1960 WILLIAMSBRIDGE RD
         BRONX NY 10461-1607

* Commercial Base Pricing Priority Mail rates apply. There is no fee for USPS Tracking™ service on Priority Mail service with use of this electronic rate shipping label. Delivery information is not available by phone for the electronic rate. Refunds for unused postage paid labels can be requested online 30 days from the print date.

## Online Label Record (Label 1 of 1)

### USPS TRACKING™ Number:
### 9405 5036 9930 0432 1517 06

Paid Online

| | | |
|---|---|---|
| Transaction #: | 264459818 | Priority Mail® Postage: $5.25 |
| Print Date: | 05/17/2013 | Total: $5.25 |
| Ship Date: | 05/17/2013 | |

From:    WILLIAM SALGADO
         LAW OFFICE
         3706 82ND ST
         STE 310
         JACKSON HTS NY 11372-7017

To:      US TRUSTEE
         271 CADMAN PLZ E
         STE 4629
         BROOKLYN NY 11201-1820

* Commercial Base Pricing Priority Mail rates apply. There is no fee for USPS Tracking™ service on Priority Mail service with use of this electronic rate shipping label. Delivery information is not available by phone for the electronic rate. Refunds for unused postage paid labels can be requested online 30 days from the print date.